## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TPC GROUP INC., *et al.*,[1] | Case No. 22-10493 (CTG) |
| Debtors. | Jointly Administered |
| BAYSIDE CAPITAL, INC. and CERBERUS CAPITAL MANAGEMENT, L.P., | |
| Plaintiffs, | Adv. Pro. No. 22- 50372 |
| v. | |
| TPC GROUP INC., | |
| Defendant. | |

### COMPLAINT FOR DECLARATORY JUDGMENT

Bayside Capital, Inc. ("Bayside") and Cerberus Capital Management, L.P. ("Cerberus," and together with Bayside, the "Ad Hoc Group of Non-Consenting Noteholders") for their complaint against TPC Group Inc. ("TPC"), hereby allege:

### PRELIMINARY STATEMENT

1.      This case arises from TPC's decision in 2021 to issue a new series of priming notes in violation of the plain terms of its indenture with existing senior secured noteholders. The indenture clearly mandates that *each* senior secured noteholder must consent to any amendment to the indenture or the related intercreditor agreement, dealing with the application

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: TPC Group Inc. (3618); TPC Holdings, Inc. (7380); TPC Group LLC (8313); Texas Butylene Chemical Corporation (7440); Texas Olefins Domestic International Sales Corporation (4241); TPC Phoenix Fuels LLC (9133); Port Neches Fuels, LLC (1641); and TP Capital Corp. (6248). Each Debtor's corporate headquarters and mailing address is 500 Dallas St., Suite 2000, Houston, Texas 77002.

of proceeds of collateral, that would adversely affect such noteholders.  Ignoring this sacred

right, TPC purported to amend the indenture such that senior secured noteholders would get paid

out of common collateral only after payment to holders of new notes, without obtaining the

consent of all affected senior secured noteholders.  In so doing, TPC sought to enrich the

consenting senior secured noteholders, who also became holders of the new notes, to the

detriment of non-consenting noteholders.

2.      In August 2019, TPC issued $930 million in principal amount of senior secured

notes, which were subject to a 10.5% interest rate (the "Senior Secured Notes," with holders of

such notes, "Senior Noteholders"), pursuant to an indenture (the "Original Indenture").  The Ad

Hoc Group of Non-Consenting Noteholders holds approximately 10% of the principal amount of

the outstanding Senior Secured Notes.

3.      Simultaneous with issuing the Senior Secured Notes, the parties entered into an

intercreditor agreement (the "2019 Intercreditor Agreement") that gave holders of Senior

Secured Notes (i) first priority access to the proceeds of certain collateral securing the Senior

Secured Notes (the "Notes Priority Collateral") and (ii) second priority access to the proceeds of

other collateral, junior only to liens held by certain asset-based lenders (the "ABL Facility

Priority Collateral," and together with the Notes Priority Collateral, the "Collateral").

4.      The Original Indenture expressly prohibited TPC from making any changes in the

provisions of the Original Indenture or the 2019 Intercreditor Agreement dealing with the

application of proceeds of Collateral in a way that would adversely affect noteholders, unless

TPC first obtained the consent of "each Holder affected thereby."

5.      TPC ran roughshod over these promises a short eighteen months later.

6.      In February 2021, TPC issued $153 million in principal of new notes, which were

subject to a 10.875% interest rate (the "<u>Usurping Notes</u>," with holders of such notes, "<u>Usurping Noteholders</u>"), and in anticipation of its bankruptcy filing, issued in 2022 an additional approximately $51.5 million in Usurping Notes.

7.      In connection with issuing the Usurping Notes in 2021, TPC issued a supplemental indenture purporting to amend the Original Indenture (the "<u>Supplemental Indenture</u>").  Simultaneously, TPC and the indenture trustee and collateral agent for both the Senior Secured Notes and the Usurping Notes entered into a new intercreditor agreement (the "<u>2021 Intercreditor Agreement</u>") purporting to subordinate the Senior Secured Notes to the Usurping Notes with respect to the application of proceeds of Collateral.

8.      The Supplemental Indenture purported to amend the Original Indenture to (i) except the Usurping Notes from an obligation to be subject to the 2019 Intercreditor Agreement and (ii) cause the Senior Secured Notes to be subject to the 2021 Intercreditor Agreement's new waterfall scheme with respect to Collateral.  In addition, the 2021 Intercreditor Agreement had the purported effect of amending the 2019 Intercreditor Agreement's waterfall scheme with respect to Collateral.  These purported amendments to the Original Indenture, and the issuance of the 2021 Intercreditor Agreement, would have changed the application of proceeds of Collateral in a way adverse to all Senior Noteholders—namely, by subordinating the Senior Secured Notes to approximately $205 million in principal of Usurping Notes with respect to payments from proceeds of Collateral securing the Senior Secured Notes.

9.      Despite the Original Indenture's clear requirement that each Senior Noteholder consent to such a change, TPC made no evident attempt to comply.  Rather, TPC collaborated with an ad hoc group of majority holders of the Senior Secured Notes (the "<u>Ad Hoc Group of Cross-Holders</u>"), the members of which now hold the majority of both the Senior Secured Notes

and the Usurping Notes.  The members of the Ad Hoc Group of Cross-Holders purported to consent to the transaction on behalf of Senior Noteholders, but consent was not sought or obtained from other Senior Noteholders (the "Minority Holders").  Indeed, on information and belief, the Minority Holders were not even informed of the transaction until after it was consummated.

10.    TPC's failure to obtain the consent of each Senior Noteholder before purporting to change the application of the proceeds of Collateral is a breach of the Original Indenture and the change is thus ineffective as to Minority Noteholders.  Further, the consents TPC did obtain are invalid because they were obtained only from beneficial noteholders, not the record noteholders, as required by the Original Indenture.

11.    On June 1, 2022, TPC filed for protection before this Court under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  In connection therewith, TPC filed its *Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [ECF No. 36], purporting to allow $238 million of Usurping Notes to be rolled-up into a $323 million debtor-in-possession financing.  TPC chose this proposed DIP package (the "Cross-Holder DIP Proposal") over a competing offer for DIP financing offered by the Ad Hoc Group of Non-Consenting Noteholders (the "Minority Holders DIP Proposal"), which competing offer does not include a roll-up.  On information and belief, TPC chose the Cross-Holder DIP Proposal over the Minority Holders DIP Proposal based in part on the mistaken belief that the Usurping Notes were senior to the Senior Secured Notes.

12.     As detailed below, the Ad Hoc Group of Non-Consenting Noteholders seeks, *inter alia*, an order declaring that (i) TPC breached the Original Indenture, (ii) TPC's attempts to change the relative priority of the Senior Secured Notes *vis-à-vis* the Usurping Notes with respect to the application of proceeds of Collateral is invalid as to Minority Holders, and (iii) the application of proceeds of Collateral with respect to the Senior Secured Notes held by members of the Ad Hoc Group of Non-Consenting Noteholders is to be determined solely by the Original Indenture and the 2019 Intercreditor Agreement.[2]

## JURISDICTION AND VENUE

13.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

14.     Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

15.     Pursuant to Bankruptcy Local Rule 7008-1, the Ad Hoc Group of Non-Consenting Noteholders consents to entry of final orders or judgment by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## THE PARTIES

16.     Plaintiff Bayside is a Florida corporation with a principal place of business in Florida.  Bayside is the beneficial holder of Senior Secured Notes pursuant to the Original Indenture.

17.     Plaintiff Cerberus is a Delaware limited partnership with a principal place of

---

[2] The Ad Hoc Group of Non-Consenting Noteholders believes there is no genuine dispute as to any material fact, and that the Court can decide this case through straightforward application of the relevant terms of the Original Indenture and related documents referenced herein.  Accordingly, the Ad Hoc Group of Non-Consenting Noteholders is submitting herewith a motion for summary judgment pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure.

business in New York.  Cerberus is a beneficial holder of Senior Secured Notes pursuant to the Original Indenture.

18.     Defendant TPC is, upon information and belief, a Delaware corporation with a principal place of business in Texas.  TPC is a debtor-in-possession in the above-captioned chapter 11 cases.  TPC, along with certain affiliated debtors-in-possession, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court on June 1, 2022.

## FACTUAL ALLEGATIONS

*The Issuance of the Senior Secured Notes*

19.     On or about August 2, 2019, TPC issued $930 million in principal amount of the Senior Secured Notes pursuant to the Original Indenture, with U.S. Bank National Association ("U.S. Bank") as trustee and collateral agent.

20.     On or about the same date, the 2019 Intercreditor Agreement was entered into between U.S. Bank, as trustee and collateral agent for the Senior Noteholders, and Bank of America, N.A., as administrative agent and collateral agent for certain asset-based lenders (the "ABL Lenders").

21.     Section 4.1(a) of the 2019 Intercreditor Agreement, entitled "Application of Proceeds of Senior Collateral," provides that Senior Noteholders get paid first from the proceeds of the Notes Priority Collateral, subject only to the prior payment of certain costs and expenses related to the exercise of remedies with respect to the Collateral.  Section 4.1(a) also provides that Senior Noteholders get paid from proceeds of certain "ABL Facility Priority Collateral," second only to the ABL Lenders and subject to the aforementioned costs and expenses.

22.     The Ad Hoc Group of Non-Consenting Noteholders hold approximately 10% of the principal amount of outstanding Senior Secured Notes.

***The Subsequent Issuance of the Usurping Notes***

23.     Eighteen months after the issuance of the Senior Secured Notes, on or about February 2, 2021, TPC issued the Usurping Notes in the original amount of $153 million pursuant to a new indenture, with U.S. Bank as trustee and collateral agent.

24.     On or about February 2, 2021, in connection with issuance of the Usurping Notes, TPC and U.S. Bank entered into the Supplemental Indenture, purporting to amend the Original Indenture.  At the same time, the 2021 Intercreditor Agreement (together with the Supplemental Indenture, the "2021 Transaction Documents") was issued, purporting to subject all holders of Senior Secured Notes to the priority scheme outlined therein.

25.     In 2022, in anticipation of a bankruptcy filing, TPC issued an additional approximately $51.5 million in face amount of Usurping Notes (the "2022 Usurping Notes").

26.     The Ad Hoc Group of Non-Consenting Noteholders does not hold any Usurping Notes.

***TPC's Changes to the Application of Proceeds of Collateral***

27.     TPC failed to obtain the consent of each Senior Noteholder before entering into and issuing the 2021 Transaction Documents, in violation of the Original Indenture.

28.     Article 9 of the Original Indenture describes the varying levels of consent required to amend documents relevant to the Senior Secured Notes, including the Original Indenture and the 2019 Intercreditor Agreement.  Certain amendments can be made without the need for any consent, while other amendments require consent from a majority of holders, from a supermajority of holders, or from ***each*** Senior Noteholder affected thereby.

29.     Section 9.02(d) of the Original Indenture identifies ten specific scenarios—each of which concerns Senior Noteholders' rights to or priority of payment—in which a change is

prohibited absent consent of "each Holder affected thereby."  The consent rights set forth in

section 9.02(d) are commonly described as "sacred rights."

30.    As is relevant to this case, section 9.02(d)(10) of the Original Indenture provides:

> [W]ithout the consent of each Holder affected thereby, an amendment, supplement or waiver under this Section 9.02 may not (with respect to any [Senior Secured] Notes held by a non-consenting Holder):
> . . .
>
> (10) make any change in the provisions in the [2019 Intercreditor Agreement] or this Indenture dealing with the application of proceeds of Collateral that would adversely affect the Holders.

31.    The Supplemental Indenture and the 2021 Intercreditor Agreement purport to

change the application of proceeds of Collateral under the Original Indenture and the 2019

Intercreditor Agreement in a manner detrimental to all Senior Noteholders, in at least three ways.

32.    First, the Supplemental Indenture purports to amend the Original Indenture to

cause the Senior Secured Notes to be subject to the 2021 Intercreditor Agreement, including its

waterfall scheme with respect to Collateral.  Specifically, section 12.01(c) of the Original

Indenture states, in part:

> Notwithstanding anything to the contrary, (i) the liens and security interests granted to the Collateral Agent pursuant to the Security Documents and all rights and obligations of the Trustee and Collateral Agent hereunder in respect of the Collateral are expressly subject to the [2019 Intercreditor Agreement] and (ii) the exercise of any right or remedy by the Trustee and the Collateral Agent hereunder in respect of the Collateral is subject to the limitation and provisions of the [2019 Intercreditor Agreement].

33.    The Supplemental Indenture purports to amend section 12.01(c) of the Original

Indenture to replace the reference to the 2019 Intercreditor Agreement with the new term

"Intercreditor Agreements," which is defined by the Supplemental Indenture to mean the 2019

Intercreditor Agreement and the 2021 Intercreditor Agreement.  This change, if given effect,

would cause the Senior Secured Notes to be subject to the provisions and limitations of the 2021 Intercreditor Agreement, including the section therein entitled "Application of Proceeds," which prioritizes payments to the holders of the Usurping Notes on account of proceeds of Collateral before payment to the holders of the Senior Secured Notes.

34.     Section 8.17(b) of the 2021 Intercreditor Agreement provides that, as between the Senior Noteholders and the Usurping Noteholders, where there is a conflict between the 2019 Intercreditor Agreement and the 2021 Intercreditor Agreement, the 2021 Intercreditor Agreement "shall control."  Accordingly, these changes to the Original Indenture have the effect of making the Senior Noteholders subject to the 2021 Intercreditor Agreement's waterfall scheme with respect to Collateral notwithstanding the conflicting waterfall scheme in the 2019 Intercreditor Agreement.

35.     Second, the Supplemental Indenture purports to amend the definition of "Permitted Liens" to except at least $113 million of the Usurping Notes from the requirement that they be subject to the 2019 Intercreditor Agreement.

36.     Specifically, section 4.07(d) of the Supplemental Indenture states that $113 million in aggregate principal amount of the Usurping Notes shall be treated as indebtedness incurred under section 4.07(b)(1), and cannot later be reclassified.  Under the Original Indenture, any liens securing debt issued under section 4.07(b)(1) are required to be "subject to the provisions of" the 2019 Intercreditor Agreement, including its waterfall scheme giving the Senior Secured Notes first priority of payment from proceeds of the Notes Priority Collateral and second priority of payment from proceeds of the ABL Facility Priority Collateral.  The Supplemental Indenture purports to amend the definition of "Permitted Liens" with respect to debt incurred under section 4.07(b)(1) such that the liens securing the Usurping Notes are

excepted from the requirement to be subject to the 2019 Intercreditor Agreement.

37.    In addition to the $113 million in principal amount of the Usurping Notes, on information and belief, TPC issued the approximately $51.5 million in principal amount of 2022 Usurping Notes pursuant to section 4.07(b)(1) of the Supplemental Indenture.

38.    Third, the 2021 Intercreditor Agreement further purports to change the priority of Senior Secured Notes relative to the Usurping Notes.  Section 2.1 of the 2021 Intercreditor Agreement provides that any lien on "Common Collateral," inclusive of the Notes Priority Collateral and the ABL Facility Priority Collateral, securing the Usurping Notes "shall have priority over and be senior in all respects and prior to" any liens on the "Common Collateral" securing the Senior Secured Notes.  Further, section 4.1 of the 2021 Intercreditor Agreement (titled "Application of Proceeds") provides that proceeds of Collateral, inclusive of the Notes Priority Collateral set forth in the 2019 Intercreditor Agreement, shall be applied to the Senior Secured Notes only after discharge of the Usurping Notes.

39.    These purported changes to the application of proceeds of Collateral, if given effect, subordinate the Senior Secured Notes to the Usurping Notes with respect to the proceeds of Collateral.

40.    Notwithstanding the mandate of section 9.02(d)(10) of the Original Indenture that the aforementioned changes in the application of proceeds of Collateral require the consent of "each Holder affected thereby," TPC did *not* obtain the consent of all Senior Noteholders before issuing the 2021 Transaction Documents or the Usurping Notes.  Rather, TPC only sought and obtained consents from members of the Ad Hoc Group of Cross-Holders.

41.    Through its failure to obtain the consent of all Senior Noteholders before amending the Original Indenture as described above and before issuing the 2021 Intercreditor

Agreement, TPC failed to comply with section 9.02(d)(10) of the Original Indenture.

Accordingly, the purported subordination of the Senior Secured Notes to the Usurping Notes is

ineffective as to the Senior Secured Notes held by Senior Noteholders who did not consent to the

transaction.

***Invalid Consents***

42.     Further, even if consent from less than all of the Senior Noteholders was

sufficient to make the aforementioned changes in the application of proceeds of Collateral

securing the Senior Secured Notes (which it was not), the "consents" TPC did obtain were

invalid because they were not obtained from the record holders of the Senior Secured Notes.

Specifically, section 9.02 of the Original Indenture requires the consent of "Holders."  "Holder"

is defined by the Original Indenture as the registered holder, *i.e.*, a "Person in whose name a

Note is registered in the register maintained by the Registrar."  On information and belief, the

Holder is Cede & Co., as nominee for the Depository Trust Company.

43.     In connection with issuance of the 2021 Transaction Documents and the Usurping

Notes, TPC obtained consents on form letters which stated, ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ Each

signatory of such a letter then purported to consent, ████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████ These letters did not purport to reflect the

consent of registered holders of the Senior Secured Notes and did not reflect any proxy or

authorization from the registered holder to consent.  Accordingly, any resulting changes to the

Original Indenture or the 2019 Intercreditor Agreement that required the consent of Holders,

including those changes that affected the priority of the Senior Secured Notes, were invalid

pursuant to the consent requirements of section 9.02 of the Original Indenture.

***Notice of Breaches to TPC***

44.     On March 31, 2022, counsel for the Ad Hoc Group of Non-Consenting

Noteholders sent a notice letter to counsel for TPC asserting violations of section 9.02(d)(10) of

the Original Indenture.

45.     Thereafter, TPC, acting through its counsel, denied that TPC breached section

9.02(d)(10) of the Original Indenture.

## CAUSES OF ACTION

## COUNT I – DECLARATORY JUDGMENT
## (AS TO SECTION 9.02(d)(10) OF THE ORIGINAL INDENTURE)

46.     The Ad Hoc Group of Non-Consenting Noteholders alleges and incorporates by

reference each of the foregoing paragraphs as if fully set forth herein.

47.     Section 9.02(d)(10) of the Original Indenture provides:

> [W]ithout the consent of each Holder affected thereby, an
> amendment, supplement or waiver under this Section 9.02 may not
> (with respect to any [Senior Secured] Notes held by a non-
> consenting Holder):
> . . .
>
> (10) make any change in the provisions in the [2019 Intercreditor
> Agreement] or this Indenture dealing with the application of
> proceeds of Collateral that would adversely affect the Holders.

48.     The amendments to the Original Indenture reflected in the Supplemental

Indenture, and the issuance of the 2021 Intercreditor Agreement, purport to change the

application of proceeds of Collateral in a way adverse to all Senior Noteholders, in at least three

ways.

49.     First, the Supplemental Indenture purports to amend section 12.01(c) of the

Original Indenture to cause the Senior Secured Notes to be subject to the provisions and

limitations of the 2021 Intercreditor Agreement, including the waterfall scheme with respect to

Collateral set forth therein.  The 2021 Intercreditor Agreement, in turn, specifies that, as between

the Senior Noteholders and the Usurping Noteholders, in the event of a conflict between the

2019 Intercreditor Agreement and the 2021 Intercreditor Agreement, the 2021 Intercreditor

Agreement governs.  Accordingly, the change to section 12.01(c) of the Original Indenture, if

given effect, would subject the Senior Secured Notes to the waterfall scheme with respect to

Collateral in the 2021 Intercreditor Agreement to the extent it conflicts with the waterfall scheme

in the 2019 Intercreditor Agreement.  By failing to obtain the consent of all Senior Noteholders

before amending section 12.01(c), TPC breached section 9.02(d)(10) of the Original Indenture.

50.     Second, under the Original Indenture, any liens securing debt issued under section

4.07(b)(1) are required to be "subject to the provisions of" the 2019 Intercreditor Agreement,

with its waterfall scheme giving the Senior Secured Notes senior access to the proceeds of the

Notes Priority Collateral and junior access to the proceeds of the ABL Facility Priority

Collateral.  The Supplemental Indenture purports to amend the definition of "Permitted Liens" in

the Original Indenture to exempt the Usurping Notes from this requirement to be subject to the

2019 Intercreditor Agreement.  Section 4.07(d) of the Supplemental Indenture states that $113

million in aggregate principal amount of the Usurping Notes shall be treated as indebtedness

incurred under section 4.07(b)(1), and cannot later be reclassified.  By failing to obtain the

consent of all Senior Noteholders before amending the definition of Permitted Liens in this way,

TPC breached section 9.02(d)(10) of the Original Indenture.

51.     Third, the 2021 Intercreditor Agreement itself purports to change the priority of

Senior Secured Notes relative to the Usurping Notes.  Section 2.1 of the 2021 Intercreditor Agreement provides that any lien on "Common Collateral," inclusive of the Notes Priority Collateral and the ABL Facility Priority Collateral, securing the Usurping Notes "shall have priority over and be senior in all respects and prior to" any liens on the "Common Collateral" securing the Senior Secured Notes.  Further, section 4.1 of the 2021 Intercreditor Agreement (titled "Application of Proceeds") provides that proceeds of Collateral, inclusive of the Notes Priority Collateral set forth in the 2019 Intercreditor Agreement, shall be applied to the Senior Secured Notes only after discharge of the Usurping Notes.  By issuing the 2021 Intercreditor Agreement, TPC breached section 9.02(d)(10) of the Original Indenture.  In the alternative, by issuing the 2021 Intercreditor Agreement, TPC breached the implied covenant of good faith and fair dealing.

52.    TPC's breaches are continuing and have not been cured.

53.    TPC has denied that it has breached the Original Indenture.

54.    An actual and justiciable controversy exists between the Ad Hoc Group of Non-Consenting Noteholders and TPC as to whether the Original Indenture was violated as described herein.

55.    As a result, the Ad Hoc Group of Non-Consenting Noteholders is entitled to an order declaring that (i) TPC has breached section 9.02(d)(10) of the Original Indenture as described herein, (ii) the 2021 Transaction Documents are of no force and effect with respect to the Senior Secured Notes held by members of the Ad Hoc Group of Non-Consenting Noteholders, to the extent the 2021 Transaction Documents, if given effect, would change the application of proceeds of Collateral under the Original Indenture and the 2019 Intercreditor Agreement in a manner adversely affecting Senior Noteholders, and (iii) the application of

proceeds of Collateral securing the Senior Secured Notes held by members of the Ad Hoc Group

of Non-Consenting Noteholders, including the relative priority of those Senior Secured Notes

and the Usurping Notes, is to be determined solely by the Original Indenture and the 2019

Intercreditor Agreement.

## COUNT II – DECLARATORY JUDGMENT
### (AS TO INVALID CONSENTS)

56.　　The Ad Hoc Group of Non-Consenting Noteholders alleges and incorporates by

reference each of the foregoing paragraphs as if fully set forth herein.

57.　　Section 9.02 of the Original Indenture requires the consent of "Holders."

"Holder" is defined by the Original Indenture as the registered holder, *i.e.*, a "Person in whose

name a Note is registered in the register maintained by the Registrar."

58.　　In connection with issuance of the 2021 Transaction Documents and the Usurping

Notes, TPC did not obtain consents of the registered holders of the Senior Secured Notes

beneficially held by members of the Ad Hoc Group of Cross-Holders.  Instead, TPC only

obtained consents of beneficial holders of the Senior Secured Notes, without any proxy or

authorization from the registered holders.

59.　　Accordingly, the consents obtained by TPC are not effective under the Original

Indenture, and any resulting changes to the Original Indenture or the 2019 Intercreditor

Agreement that required the consent of Holders, including the purported changes to the relative

priority of the Senior Secured Notes detailed above, violated the consent requirements of section

9.02 of the Original Indenture.

60.　　 The breach of section 9.02 of the Original Indenture due to TPC's improper

consents is continuing and has not been cured.

61.　　Upon information and belief, TPC would deny that it obtained consents from the

improper parties pursuant to section 9.02 of the Original Indenture.

62.     An actual and justiciable controversy exists between the Ad Hoc Group of Non-Consenting Noteholders and TPC as to whether TPC obtained consents from improper parties with respect to entering into the Supplemental Indenture or the 2021 Intercreditor Agreement.

63.     The Ad Hoc Group of Non-Consenting Noteholders is entitled to an order declaring that (i) the consents TPC obtained in connection with issuance of the 2021 Transaction Documents and the Usurping Notes are invalid because they were not obtained from the registered holders of the Senior Secured Notes, (ii) the purported changes to the Original Indenture and the 2019 Intercreditor Agreement with respect to the relative priority of the Senior Secured Notes caused by the 2021 Transaction Documents, and any other purported changes to the Original Indenture and the 2019 Intercreditor Agreement that required consent of some or all Holders, breached section 9.02 of the Original Indenture, and (iii) the above-described changes to the Original Indenture and the 2019 Intercreditor Agreement, with respect to the relative priority of the Senior Secured Notes caused by the 2021 Transaction Documents, and any other purported changes to the Original Indenture and the 2019 Intercreditor Agreement that required consent of some or all Holders pursuant to section 9.02 of the Original Indenture, are of no force and effect with respect to the Senior Secured Notes held by members of the Ad Hoc Group of Non-Consenting Noteholders.

## **RELIEF DEMANDED**

The Ad Hoc Group of Non-Consenting Noteholders respectfully requests that the Court enter judgment in favor of the Ad Hoc Group of Non-Consenting Noteholders as follows:

(a)     Declaring that:

(i)     TPC has breached section 9.02(d)(10) of the Original Indenture;

(ii)     the 2021 Transaction Documents are of no force and effect with respect to the Senior Secured Notes held by members of the Ad Hoc Group of Non-Consenting Noteholders, to the extent the 2021 Transaction Documents, if given effect, would change the application of proceeds of Collateral under the Original Indenture and the 2019 Intercreditor Agreement in a manner adversely affecting Senior Noteholders; and

(iii)    the application of proceeds of Collateral securing the Senior Secured Notes held by members of the Ad Hoc Group of Non-Consenting Noteholders, including the relative priority of the Senior Secured Notes and the Usurping Notes, is to be determined solely by the Original Indenture and the 2019 Intercreditor Agreement.

(b)     Declaring that:

(i)     the consents TPC obtained in connection with issuance of the 2021 Transaction Documents and the Usurping Notes are invalid because they were not obtained from the registered holders of the Senior Secured Notes;

(ii)    the above-described changes to the Original Indenture and the 2019 Intercreditor Agreement with respect to the relative priority of the Senior Secured Notes caused by the 2021 Transaction Documents, and any other purported changes to the Original Indenture and the 2019 Intercreditor Agreement that required consent of some or all Holders, breached section 9.02 of the Original Indenture; and

(iii)   the above-described changes to the Original Indenture and the 2019 Intercreditor Agreement, with respect to the relative priority of the Senior

Secured Notes caused by the 2021 Transaction Documents, and any other purported changes to the Original Indenture and the 2019 Intercreditor Agreement that required consent of some or all Holders pursuant to section 9.02 of the Original Indenture, are of no force and effect with respect to the Senior Secured Notes held by members of the Ad Hoc Group of Non-Consenting Noteholders;

(c)    Awarding fees and expenses, including attorneys' fees; and

(d)    Granting such other, further, or different relief as this Court deems just and proper.

Dated:  June 1, 2022                    **PACHULSKI STANG ZIEHL & JONES LLP**

                                        */s/ Laura Davis Jones*
                                        Laura Davis Jones (DE Bar No. 2436)
                                        Timothy P. Cairns (DE Bar No. 4228)
                                        919 North Market Street, 17th Floor
                                        P.O. Box 8705
                                        Wilmington, Delaware  19899 (Courier 19801)
                                        Telephone:  (302) 652-4100
                                        Facsimile:  (302) 652-4400
                                        Email: ljones@pszjlaw.com
                                                tcairns@pszjlaw.com


                                        - and -

                                        **MILBANK LLP**

                                        Gerard Uzzi (*pro hac vice* pending)
                                        Nelly Almeida (*pro hac vice* pending)
                                        55 Hudson Yards
                                        New York, NY 10001
                                        Telephone: (212) 530-5000
                                        Facsimile:  (212) 530-5219
                                        Email: guzzi@milbank.com
                                                nalmeida@milbank.com

                                        Aaron L. Renenger (*pro hac vice* pending)
                                        John P. Estep (*pro hac vice* pending)
                                        1850 K Street NW, Suite 1100
                                        Washington, DC 20006
                                        Telephone: (202) 835-7500
                                        Facsimile:  (202) 263-7586
                                        Email: arenenger@milbank.com
                                                jestep@milbank.com

                                        *Counsel for the Ad Hoc Group of*
                                        *Non-Consenting Noteholders*