## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| TPC GROUP INC., *et al.*, | Case No. 22-10493 (CTG) |
| Debtors.[1] | Jointly Administered |
| BAYSIDE CAPITAL, INC. and CERBERUS CAPITAL MANAGEMENT, L.P., | Adv. Pro. No. 22-50372 (CTG) |
| Plaintiffs, | |
| v. | |
| TPC GROUP INC., | |
| Defendant. | |

## OPENING BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: TPC Group Inc. (3618); TPC Holdings, Inc. (7380); TPC Group LLC (8313); Texas Butylene Chemical Corporation (7440); Texas Olefins Domestic International Sales Corporation (4241); TPC Phoenix Fuels LLC (9133); Port Neches Fuels, LLC (1641); and TP Capital Corp. (6248).  Each Debtor's corporate headquarters and mailing address is 500 Dallas St., Suite 2000, Houston, Texas 77042.

**BAKER BOTTS L.L.P.**
James R. Prince (admitted *pro hac vice*)
Kevin Chiu (admitted *pro hac vice*)
2001 Ross Avenue, Suite 900
Dallas, Texas 75201-2980
Telephone:     (214) 953-6500
Facsimile:      (214) 953-6503
Email: jim.prince@bakerbotts.com
           kevin.chiu@bakerbotts.com

-and-

BAKER BOTTS L.L.P.
Scott R. Bowling (admitted *pro hac vice*)
30 Rockefeller Plaza
New York, New York 10112
Telephone:     (212) 408-2500
Facsimile:      (212) 259-2501
Email: scott.bowling@bakerbotts.com

-and-

BAKER BOTTS L.L.P.
David R. Eastlake (admitted *pro hac vice*)
Lauren N. Randle (admitted *pro hac vice*)
910 Louisiana Street
Houston, Texas 77002
Telephone:     (713) 229-1234
Facsimile:      (713) 229-1522
Email: david.eastlake@bakerbotts.com
           lauren.randle@bakerbotts.com

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Robert J. Dehney (No. 3578)
Curtis S. Miller (No. 4583)
Daniel B. Butz (No. 4227)
Matthew O. Talmo (No. 6333)
Brian Loughnane (No. 6853)
1201 N. Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email:     rdehney@morrisnichols.com
             cmiller@ morrisnichols.com
             dbutz@ morrisnichols.com
             mtalmo@ morrisnichols.com
             bloughnane@ morrisnichols.com

*Proposed Attorneys for TPC Group Inc.*

**TABLE OF CONTENTS**

**Page**

I.      NATURE AND STAGE OF THE PROCEEDING............................................................. 1

II.     INTRODUCTION ................................................................................................. 1

III.    STATEMENT OF FACTS ...................................................................................... 2

    A.      The 10.5% Notes.................................................................................... 2

    B.      The 10.875% Notes................................................................................ 4

    C.      Cerberus and Bayside bring suit in violation of the 10.5% Notes Indenture and Supplemental Indenture. .................................................................. 5

IV.     LEGAL STANDARD............................................................................................. 5

V.      ARGUMENT ........................................................................................................ 6

    A.      The 10.5% Notes Indenture is unambiguous and requires noteholders to comply with Section 6.06(a) prior to authorizing suit. ........................................... 7

    B.      Cerberus and Bayside breached the 10.5% Notes Indenture by bringing suit without first satisfying the prerequisites of Section 6.06(a). .......................... 8

VI.     CONCLUSION.................................................................................................... 12

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Akanthos Capital Mgmt., LLC v. CompuCredit Holdings Corp.*,
    677 F.3d 1286 (11th Cir. 2012) ...............................................................................12

*Alleco, Inc. v. IBJ Schroder Bank & Tr. Co.*,
    745 F. Supp. 1467 (D. Minn. 1989)........................................................................12

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..................................................................................................6

*Birn v. Childs Co.*,
    37 N.Y.S.2d 689 (Sup. Ct. 1942)..............................................................................9

*Brady v. UBS Fin. Servs., Inc.*,
    538 F.3d 1319 (10th Cir. 2008) ..............................................................................10

*Celotex v. Catrett*,
    477 U.S. 317 (1986)..................................................................................................6

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
    837 F. Supp. 2d 162 (S.D.N.Y. 2011)....................................................................12

*Eternity Global Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
    375 F.3d 168 (2d Cir. 2004)......................................................................................8

*Feder v. Union Carbide Corp.*,
    530 N.Y.S.2d 165 (N.Y. App. Div. 1988) ................................................................9

*Finisar Corp. v. U.S. Bank Trust Nat'l Ass'n*,
    No. C 07-04052 JF (PVT), 2008 WL 2622864 (N.D. Cal. June 30, 2008) ............10

*Greenfield v. Philles Records, Inc.*,
    780 N.E.2d 166 (N.Y. 2002)....................................................................................7

*In re Energy Future Holdings Corp.*,
    539 B.R. 723 (Bankr. D. Del. 2015) .........................................................................7

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
    No. CIV.A. 03-5808, 2008 WL 744823 (S.D. Tex. Mar. 19, 2008)........................9

*Mercado v. Schwartz*,
    63 Misc. 3d 362 (N.Y. Sup. Ct. 2019) .....................................................................7

*Murray v. U.S. Bank Trust Nat'l Assn.*,
    365 F.3d 1284 (11th Cir. 2004) .................................................9

*Peak Partners, LP v. Republic Bank*,
    191 Fed. Appx. 118 (3d Cir. 2006) ............................................12

*SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.*,
    934 F. Supp. 2d 516 (E.D.N.Y. 2013), aff'd, 548 Fed. Appx. 741 (2d Cir.
    2014) ...............................................................................9, 12

*Schron v. Troutman Sanders LLP*,
    986 N.E.2d 430 (N.Y. 2013) ....................................................7

*VKK Corp. v. Nat'l Football League*,
    244 F.3d 114 (2d Cir. 2001) ....................................................8

*W.W.W. Assocs., Inc. v. Giancontieri*,
    566 N.E.2d 639 (N.Y. 1990) ....................................................8

**Rules and Statutes**

28 U.S.C. § 2201 ......................................................................6

Federal Rule of Bankruptcy Procedure 7056 ...................................5

Federal Rule of Civil Procedures 56 .........................................1, 5

NY CPLR § 3001 .....................................................................7

## I.  NATURE AND STAGE OF THE PROCEEDING

On June 2, 2022, Plaintiffs and Counter-Defendants Cerberus Capital Management, LP ("**Cerberus**") and Bayside Capital, Inc. ("**Bayside**") (together, "**Plaintiffs**" or "**Counter-Defendants**") commenced this adversary proceeding against Defendant and Counter-Plaintiff TPC Group Inc. ("**TPC**") by filing their *Complaint for Declaratory Judgment* [A.D.I. 3, 9][2] (the "**Complaint**").  Contemporaneously with the Complaint, Plaintiffs filed the *Ad Hoc Group of Non-Consenting Noteholders' Motion for Summary Judgment* [A.D.I. 4, 10].

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, Defendant and Counter-Plaintiff TPC Group Inc. ("**TPC**") moves for summary judgment and respectfully submits this *Opening Brief in Support of Motion for Summary Judgment*. Contemporaneously with the filing of this opening brief and the motion for summary judgment, TPC is filing its *Counterclaim for Declaratory Judgment* against Counter-Defendants.

## II.  INTRODUCTION

This adversary proceeding presents a simple question: did Plaintiffs/Counter-Defendants Cerberus and Bayside—the beneficial holders of less than 10% of the aggregate principal amount of the 10.5% Notes issued by TPC pursuant to the terms of an August 2, 2019 Indenture (as amended and supplemented by a February 2, 2021 Supplemental Indenture)—violate those indentures by bringing the above-captioned adversary proceeding without first complying with the terms of the indentures' no-action clause?  The answer is yes.  For that reason, summary judgment in TPC's favor is required as to its counterclaim for declaratory judgment.

---

[2] "D.I." is used to reference items filed on the docket in the main bankruptcy case (Case No. 22-10493 (CTG)), while "A.D.I." is used to reference items filed on the docket in this adversary proceeding.

### III.   STATEMENT OF FACTS

**A.    The 10.5% Notes.**

On August 2, 2019, TPC issued 10.5% senior secured notes due in 2024 in the face amount of $930 million (the "**10.5% Notes**").  The terms of the 10.5% Notes, and the rights and responsibilities of TPC, the various holders of 10.5% Notes, the Trustee (U.S. National Bank) ("**US Bank**" or "**Trustee**") and various guarantors were set forth in an Indenture signed that same day (the "**10.5% Notes Indenture**").  *See* Exhibit A, 10.5% Notes Indenture.  Approximately $930 million in aggregate principal amount of 10.5% Notes remains outstanding, plus accrued and unpaid interest, premiums, fees, and other charges.  The relationship between the holders of the 10.5% Notes themselves—including, among others, Cerberus and Bayside—and Bank of America, N.A., as legal representative and collateral agent for the lenders under that certain Amended and Restated Credit Agreement dated as of August 2, 2019 (the "ABL Representative"), were governed by a 2019 Intercreditor Agreement (the "**2019 ICA**").  Cerberus and Bayside, together, are beneficial holders of less than 10% of the 10.5% Notes.  *See* Verified Statement Pursuant to Bankruptcy Rule 2019, at Ex. A [D.I. 74-1] (reflecting Cerberus and Bayside's ownership of $90,061,000.00 in aggregate principal the 10.5% Notes—less than 10% of the total aggregate principal of $930,000,000.00 in outstanding 10.5% Notes).

The 10.5% Notes Indenture (as amended and supplemented by the Supplemental Indenture) contains a number of provisions directly relevant here.  First, Section 14.08 of the 10.5% Notes Indenture—titled "Governing Law"—provides that New York law governs the 10.5% Notes Indenture and 10.5% Notes:

> THIS INDENTURE, THE NOTES, AND THE NOTE GUARANTEES SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

Ex. A, 10.5% Notes Indenture § 14.08.

2

Additionally, Section 6.05 of the 10.5% Notes Indenture—<u>Control by Majority</u>—provides that the majority of holders control the process for exercising remedies under the 10.5% Notes Indenture:

> Holders of a majority in aggregate principal amount of the then outstanding Notes may direct the time, method and place of conducting any proceeding for exercising any remedy available to the Trustee or exercising any trust or power conferred on it. However, the Trustee may refuse to follow any direction that conflicts with law or this Indenture that the Trustee determines may be unduly prejudicial to the rights of other Holders or that may involve the Trustee in personal liability.

Ex. A, 10.5% Notes Indenture § 6.05.

Finally, the 10.5% Notes Indenture also contains specific requirements that must be met before a noteholder can bring any action or seek any remedy related to the 10.5% Notes Indenture or the 10.5% Notes. Specifically, Section 6.06 of the 10.5% Notes Indenture—titled "<u>Limitation on Suits</u>"—provides that:

> (a) A Holder may pursue a remedy with respect to this Indenture of the Notes ***only if***:
>
> > (1)    such Holder has previously given the Trustee written notice that an Event of Default is continuing;
> >
> > (2)    Holders of at least 25% in aggregate principal amount of the then outstanding Notes have requested the Trustee in writing to pursue the remedy;
> >
> > (3)    such Holder or Holders offer and, if requested, provide to the Trustee security or indemnity satisfactory to the Trustee against any loss, liability or expense;
> >
> > (4)    the Trustee does not comply with the request within 60 days after receipt of the request and the offer of security or indemnity; and
> >
> > (5)    during such 60−day period, Holders of a majority in aggregate principal amount of the then outstanding Notes do not give the Trustee a written direction inconsistent with such request.

Ex. A, 10.5% Notes Indenture § 6.06(a) (emphasis added).

3

**B.     The 10.875% Notes.**

After TPC issued the 10.5% Notes, its business and liquidity were impacted by several material adverse events, including an explosion that occurred on November 27, 2019 at TPC's Port Neches, Texas facility (the "**PNO Incident**"), the 2020 oil and gas market crash, and the COVID-19 pandemic.   These events and their impact on TPC are described in more detail in the *Declaration of Robert A. Del Genio in Support of Debtors' Chapter 11 Petition and First Day Motions* [D.I. 28].  To mitigate the negative impact of these events, TPC began pursuing multiple strategies to address its liquidity and capital structure.

Relevant here, on February 2, 2021, the Company issued a new set of notes at 10.875% interest (the "**10.875% Notes**"), in an aggregate principal amount of $153 million.  In connection with the issuance of the 10.875% Notes, TPC issued a Supplemental Indenture with respect to the 10.5% Notes (the "**Supplemental Indenture**") and a new intercreditor agreement to govern the relationship between holders of the 10.5% Notes and the 10.875% Notes (the "**2021 Intercreditor Agreement**").  The Supplemental Indenture did not change or modify the terms of Section 6.06(a) of the 10.5% Notes Indenture in any way.  Additionally, TPC executed an Indenture for the 10.875% Notes which—like the 10.5% Notes Indenture—governed the terms of the 10.875% Notes, and the rights and responsibilities of TPC, the various holders of 10.875% Notes, the Trustee, and various guarantors (the "**10.875% Notes Indenture**").

Consistent with the terms of the 10.5% Notes Indenture, more than a super majority (66 2/3%) of the existing noteholders of the 10.5% Notes affirmatively consented to the issuance of the 10.875% Notes, the Supplemental Indenture, the 10.875% Indenture, and the 2021 Intercreditor Agreement by executing various Consent(s) of Noteholders.

C.      **Cerberus and Bayside bring suit in violation of the 10.5% Notes Indenture and Supplemental Indenture.**

On April 26, 2022, Counter-Defendants wrote a letter to the Trustee requesting the Trustee to "decline to follow[] any directions from Cross-Holders [*i.e.*, the holders of the 10.5% and 10.875% Notes, also known as the Ad Hoc Noteholder Group] with respect to the DIP or the Company's bankruptcy filings that would be prejudicial to the rights of [Cerberus and Bayside]." Ex. D, April 26, 2022 Ltr. to U.S. Bank. That letter did not contend that an event of default was continuing. *See generally* Ex. D. Nor did that letter indicate that holders of 25% of the aggregate principal of the outstanding 10.5% Notes was seeking a remedy. *Id.* . Indeed, that is not possible, because the members of the Ad Hoc Noteholder Group, who are party to a Restructuring Support Agreement with the Debtors, collectively hold in excess of 80% of the outstanding principal amount of the 10.5% Notes.[3]

On June 1, 2022, TPC and certain affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court. The next day, Counter-Defendants filed the instant adversary proceeding in this Court seeking a declaration that TPC breached the 10.5% Notes Indenture and 2019 Intercreditor Agreement.

## IV.     LEGAL STANDARD

Federal Rule of Civil Procedure 56, made applicable here by Bankruptcy Rule 7056, dictates that summary judgment be entered where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). A fact is "material" only if it can affect the outcome of the action. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once the movant shows the absence of a genuine issue of material fact,

---

[3]     *See* Verified Statement of the Ad Hoc Noteholder Group, dated June 1, 2022, Bank. Case 22-10493-CTG, Doc. 44.

the nonmoving party may not rest upon the allegations of its pleading, but must set forth specific

facts that raise a genuine issue for trial. *See Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

## V.    ARGUMENT

Cerberus and Bayside's lawsuit violates Section 6.06(a) of the 10.5% Notes Indenture,

which unambiguously bars suit by any noteholder unless certain pre-suit prerequisites are satisfied.

Cerberus and Bayside failed to comply with any requirement of Section 6.06(a), as they: (1) did

not provide notice to the Trustee of a continuing event of default, as required by Section 6.06(a)(1);

(2) own less than 10% of the aggregate principal amount of the 10.5% Notes (in violation of

Section 6.06(a)(2)'s requirement that holders of at least 25% of the 10.5% Notes aggregate

principal issue a written request to the Trustee before suit is authorized); (3) offered or been

requested to provide indemnity to the Trustee, as required by Section 6.06(a)(3); and (4) did not

wait the requisite sixty days prior to filing suit, rendering compliance with Sections 6.06(a)(4)-(5)

impossible.

Cerberus and Bayside's violation of Section 6.06(a) requires that the Court grant summary

judgment in TPC's favor. Under 28 U.S.C. § 2201

> In a case of actual controversy within its jurisdiction . . . as determined by
> the administering authority, any court of the United States, upon the filing
> of an appropriate pleading, may declare the rights and other legal relations
> of any interested party seeking such declaration, whether or not further
> relief is or could be sought. Any such declaration shall have the force and
> effect of a final judgment or decree and shall be reviewable as such.[4]

Here, a justiciable controversy exists between TPC and Counter-Defendants concerning

the interpretation of, and the parties' legal rights under, the 10.5% Notes Indenture and

---

[4] The same is true under New York law. *See* NY CPLR § 3001 ("The supreme court may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed."); *Mercado v. Schwartz*, 63 Misc. 3d 362, 368 (N.Y. Sup. Ct. 2019) ("A cause of action for declaratory relief accrues when there is a bona fide, justiciable controversy between the parties").

Supplemental Indenture.  Specifically, TPC requests that this Court issue a judgment declaring that, pursuant to the 10.5% Notes, Cerberus and Bayside's lawsuit violates Section 6.06(a) of the 10.5% Notes Indenture.  Here, summary judgment is warranted because Cerberus and Bayside breached the 10.5% Notes Indenture by failing to comply with the requirements of the 10.5% Notes Indenture's no-action clause prior to bringing their claims in this adversary proceeding.

**A.     The 10.5% Notes Indenture unambiguously required Cerberus and Bayside to comply with Section 6.06(a) prior to commencing this Adversary Proceeding.**

Section 6.06(a) of the 10.5% Notes Indenture (and amended and supplemented by the Supplemental Indenture) is unambiguous, and provides that noteholders, like Cerberus and Bayside, are not permitted to bring suit with respect to the 10.5% Notes or indentures without first complying with all pre-suit prerequisites provided for in the contract.

It is well settled under New York law that written agreements are construed in accordance with the parties' intent, and "'[t]he best evidence of what parties to a written agreement intend is what they say in their writing.'" *In re Energy Future Holdings Corp.*, 539 B.R. 723, 727 (Bankr. D. Del. 2015) (quoting *Schron v. Troutman Sanders LLP*, 986 N.E.2d 430, 433 (N.Y. 2013)). "Thus, a written agreement that is complete, clear and unambiguous on its face *must be enforced according to the plain meaning of its terms*." *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002) (emphasis added); *see also W.W.W. Assocs., Inc. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990) ("A familiar and eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms.").

The interpretation of an unambiguous contract is "'matter of law for the court to decide.'" *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 129 (2d Cir. 2001) (citations omitted); *see, e.g.*, *Eternity Global Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 178 (2d

Cir. 2004) (whether a contract provision is ambiguous is also a question of law for the court) (citing

*W.W.W. Assocs.*, 566 N.E.2d at 642).

Section 6.06(a) is unambiguous, and provides, in pertinent part, as follows:

(a) A Holder may pursue a remedy with respect to this Indenture of the Notes *only if*:

> (1)    such Holder has previously given the Trustee written notice that an Event of Default is continuing;

> (2)    Holders of at least 25% in aggregate principal amount of the then outstanding Notes have requested the Trustee in writing to pursue the remedy;

> (3)    such Holder or Holders offer and, if requested, provide to the Trustee security or indemnity satisfactory to the Trustee against any loss, liability or expense;

> (4)    the Trustee does not comply with the request within 60 days after receipt of the request and the offer of security or indemnity; and

> (5)    during such 60−day period, Holders of a majority in aggregate principal amount of the then outstanding Notes do not give the Trustee a written direction inconsistent with such request.

Ex. A, 10.5% Notes Indenture § 6.06(a) (emphasis added).

This provision is unambiguous, as it is reasonably susceptible to only one interpretation—

suit by any holder of the 10.5% Notes related to the Notes or the 10.5% Indenture is barred unless

and until that noteholder complies with the various prerequisites provided in Section 6.06(a)(1-5).

**B.      Cerberus and Bayside failed to comply with Section 6.06(a).**

TPC is entitled to a declaratory judgment claim as a matter of law because Cerberus and

Bayside violated Section 6.06(a)—the 10.5% Notes Indenture's no-action clause—in commencing

this Adversary Proceeding.

New York, which governs the 10.5% Notes Indenture, law has long favored the

enforcement of "no-action" clauses to prevent actions for alleged breaches of indentures where the

noteholders fail to comply with prerequisites to suit.  *See Feder v. Union Carbide Corp.*, 530 N.Y.S.2d 165, 167 (N.Y. App. Div. 1988).  Such provisions "serve a highly useful purpose and have been uniformly sustained," because they "prevent individual debenture holders from getting special advantages for themselves and protect the rights and security of all holders as a class," and "afford the trustee notice and an opportunity for examination." *Birn v. Childs Co.*, 37 N.Y.S.2d 689, 696 (Sup. Ct. 1942).

Such provisions are also strictly construed by their terms—and courts routinely grant summary judgment as to lawsuits that contravene their terms.  *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, No. CIV.A. 03-5808, 2008 WL 744823, at *9 (S.D. Tex. Mar. 19, 2008) ("No-action clauses are strictly construed."); *SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.*, 934 F. Supp. 2d 516, 531 (E.D.N.Y. 2013), aff'd, 548 Fed. Appx. 741 (2d Cir. 2014) ("Courts routinely enforce these no-action clauses to bar shareholders from bringing lawsuits.").  Ultimately, "[n]o-action clauses are a common element of bond indentures and strictly limit the right of bondholders to bring suit in most circumstances."  *Brady v. UBS Fin. Servs., Inc.*, 538 F.3d 1319, 1323 n.3 (10th Cir. 2008).

Avenues for a noteholder to escape a "no-action" clause without complying with its terms are limited:

> "[N]o-action" clauses typically bar bondholders from instituting any judicial proceedings against the obligor unless the indenture trustee refuses to act after being instructed by the requisite number of bondholders specified in the trust indenture, or, if the indenture trustee acts in bad faith, or, has an adverse interest conflicting with its responsibilities under the trust indenture.

*Murray v. U.S. Bank Trust Nat'l Assn*., 365 F.3d 1284, 1289 n.9 (11th Cir. 2004); *see also Finisar Corp. v. U.S. Bank Trust Nat'l Ass'n*, No. C 07-04052 JF (PVT), 2008 WL 2622864, at *1 (N.D. Cal. June 30, 2008) ("[E]xcept in specific and very limited circumstances, the Noteholders are precluded from prosecuting their own claims under the Indentures.")

This Adversary Proceeding—which expressly seeks relief for "breach" under the 10.5% Notes and 10.5% Indenture, *see* Complaint at ¶¶ 45-55—fails to comply with the plain language of the 10.5% Notes Indenture's "no-action" clause.   Indeed, Cerberus and Bayside have not complied with *any* of the pre-suit prerequisites under Section 6.06(a):

      1.   ***Cerberus and Bayside failed to comply with Section 6.06(a)(2).***

Section 6.06(a)(2) provides that noteholders cannot bring suit in relation to the 10.5% Notes Indenture *unless* 25% of the aggregate principal amount of the 10.5% Notes supports the suit.   *See* Ex. A, 10.5% Notes Indenture, § 6.06(a)(2).   By their own admission, Cerberus and Bayside less than 10% of the 10.5% Notes.   *See* Verified Statement Pursuant to Bankruptcy Rule 2019, at Ex. A [D.I. 74-1] (reflecting Cerberus and Bayside's ownership of $90,061,000.00 in aggregate principal the 10.5% Notes—less than 10% of the total aggregate principal of $930,000,000.00 in outstanding 10.5% Notes).   Moreover, Cerberus and Bayside assert no allegation in the Complaint or their motion for summary judgment that noteholders owning at least 25% of the remaining aggregate principal amount support their suit.   Indeed, because the members of the Ad Hoc Noteholder Group, who are party to a Restructuring Support Agreement with the Debtors, collectively hold in excess of 80% of the outstanding principal amount of the 10.5% Notes, Cerberus and Bayside cannot meet the 25% requirement to commence their suit.

      2.   ***Cerberus and Bayside did not comply with Section 6.06(a)(1).***

Section 6.06(a)(1) requires that Cerberus and Bayside have "previously given the Trustee written notice that an Event of Default is continuing." *See* Ex. A, 10.5% Notes Indenture, § 6.06(a)(1). No such notice has been provided by Cerberus and Bayside.   While Cerberus and Bayside did provide a letter to the Trustee, US Bank, on April 26, 2022, *see generally* Ex. D, that

letter describes a "notice of breach" of the 10.5% Notes Indenture, but says nothing of an "Event of Default" that is "continuing," and makes no reference, even in passing, to Section 6.06.

### 3.   *Cerberus and Bayside did not comply with Section 6.06(a)(3).*

Even if the April 26, 2022 letter to US Bank was proper notice, Cerberus and Bayside's suit *still* violates Section 6.06(a) because Cerberus and Bayside have not alleged that they offered or were requested to provide an indemnity to the Trustee. Section 6.06(a)(3) requires that the holder seeking to sue "offer and, if requested, provide to the Trustee security or indemnity satisfactory to the Trustee against any loss, liability or expense." *See* Ex. A, 10.5% Notes Indenture, § 6.06(a)(3).   The April 26, 2022 letter makes no mention of any such indemnity.  And there is no evidence that such indemnity was offered by Cerberus and Bayside or requested of them.

### 4.   *Cerberus and Bayside did not comply with Sections 6.06(a)(4)-(5).*

Sections 6.06(a)(4) and (5) of the 10.5% Notes Indenture (as supplemented) required Cerberus and Bayside to wait sixty days for the Trustee and other noteholders to evaluate their request for relief before filing suit. They failed to do so and thereby violated the no-action clause. Sixty days from Cerberus and Bayside's April 26, 2022 letter is June 25, 2022. Cerberus and Bayside, however, commenced this adversary proceeding on June 2, 2022, rendering their lawsuit premature and violative of Sections 6.06(a)(4) and (5) of the 10.5% Notes Indenture.

Cerberus and Bayside's failure to meet the obligations of *any* provision of Section 6.06(a) prior to commencing this adversary proceeding (let alone *all of them*, as the contract requires) mandates summary judgment granting declaratory relief in TPC's favor.[5]

---

[5] *See, e.g.*, *Akanthos Capital Mgmt., LLC v. CompuCredit Holdings Corp.*, 677 F.3d 1286, 1296 (11th Cir. 2012) (holding that "no-action clause's terms are absolute: noteholders 'may not pursue any remedy with respect to this Indenture or the Securities" unless they complete the conditions precedent allowing them to fall within one of the two stated exceptions," and accordingly denying relief where noteholders could not, among other things, provide evidence

## VI.    CONCLUSION

For the foregoing reasons, TPC requests that this Court grant it summary judgment on its claim for declaratory judgment and issue it any other relief to which it may be entitled.

---

that "holders of at least 25% of the notes make a written demand to the Trustee to pursue a remedy"); *Alleco, Inc. v. IBJ Schroder Bank & Tr. Co.*, 745 F. Supp. 1467, 1476 (D. Minn. 1989), vacated pursuant to settlement (July 3, 1991) (where "no-action" clause in indenture restricted rights of holders of less than 25% of the aggregate principal amount, counterclaims by lawsuit by holder of approximately 19% of the principals were barred and were "dismissed for failure to comply with the terms of section 7.04."); *Peak Partners, LP v. Republic Bank*, 191 Fed. Appx. 118, 126 (3d Cir. 2006) (affirming grant of summary judgment dismissing action where "it is undisputed that Peak, holder of only 1.4 percent of the outstanding amount of Keystone notes, did not satisfy the requirements of the no-action clause" that required 25% noteholder approval); *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 188 (S.D.N.Y. 2011) (enforcing no action clause to bar suit where plaintiff failed to comply with terms regarding pre-suit notice); *SC Note Acquisitions, LLC* , 934 F. Supp. 2d at 533 (E.D.N.Y. 2013), aff'd, 548 Fed. Appx. 741 (2d Cir. 2014) (dismissing claims where noteholder failed to comply with no-action clause, including complying with requirement to provide 25% support for written request for suit).

Dated:    June 9, 2022
                Wilmington, Delaware

**BAKER BOTTS L.L.P.**
James R. Prince (admitted *pro hac vice*)
Kevin Chiu (admitted *pro hac vice*)
2001 Ross Avenue, Suite 900
Dallas, Texas 75201-2980
Telephone:    (214) 953-6500
Facsimile:    (214) 953-6503
Email: jim.prince@bakerbotts.com
          kevin.chiu@bakerbotts.com

-and-

BAKER BOTTS L.L.P.
Scott R. Bowling (admitted *pro hac vice*)
30 Rockefeller Plaza
New York, New York 10112
Telephone:    (212) 408-2500
Facsimile:    (212) 259-2501
Email: scott.bowling@bakerbotts.com

-and-

BAKER BOTTS L.L.P.
David R. Eastlake (admitted *pro hac vice*)
Lauren N. Randle (admitted *pro hac vice*)
910 Louisiana Street
Houston, Texas 77002
Telephone:    (713) 229-1234
Facsimile:    (713) 229-1522
Email: david.eastlake@bakerbotts.com
          lauren.randle@bakerbotts.com

*/s/ Robert J. Dehney*
**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Robert J. Dehney (No. 3578)
Curtis S. Miller (No. 4583)
Daniel B. Butz (No. 4227)
Matthew O. Talmo (No. 6333)
Brian Loughnane (No. 6853)
1201 N. Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email:    rdehney@morrisnichols.com
          cmiller@ morrisnichols.com
          dbutz@ morrisnichols.com
          mtalmo@ morrisnichols.com
          bloughnane@ morrisnichols.com

*Proposed Attorneys for TPC Group Inc.*