# **EXHIBIT D**

**Letter to U.S. Bank National Association**

# Milbank

**NELLY ALMEIDA**

*Partner*
55 Hudson Yards | New York, N.Y. 1001-2163
T: 212.530.5271
nalmeida@milbank.com | milbank.com

**VIA FEDEX AND FACSIMILE**

April 26, 2022

U.S. Bank National Association
Global Corporate Trust Services
13737 Noel Road, Suite 800
Dallas, Texas 75240

    Re:    Notice of Breach of 10.5% Indenture dated August 2, 2019

To Whom it May Concern:

    We represent Bayside Capital, Inc. ("Bayside") and Cerberus Capital Management, LP ("Cerberus") as holders of 10.5% senior secured notes (the "10.5% Notes") issued by TPC Group Inc. (the "Company"), with U.S. Bank National Association ("U.S. Bank") as trustee and collateral agent, pursuant to an indenture dated August 2, 2019 (the "10.5% Indenture"), as amended by a supplemental indenture dated February 2, 2021 (the "Supplemental Indenture"). We write concerning anticipated events that may implicate our clients' rights and U.S. Bank's obligations under the 10.5% Indenture.

    As you know, on February 2, 2021, the Company issued 10.875% notes (the "10.875% Notes") pursuant to an indenture dated February 2, 2021 (the "10.875% Indenture") with U.S. Bank as trustee and collateral agent and acknowledged an intercreditor agreement dated February 2, 2021 (the "2021 ICA") between U.S. Bank as Senior Priority Agent and U.S. Bank as Junior Priority Agent.

    Further, as you know, the Company is presently in default of its obligations under the 10.5% Notes Indenture. The Company has been working with us constructively with respect to its needs to restructure its obligations. We understand the Company has also been working with an ad hoc group (the "Ad Hoc Group") of holders, comprised of a majority of 10.5% Notes

MILBANK LLP

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | BEIJING | HONG KONG | SEOUL | SINGAPORE | TOKYO

U.S. Bank National Association
April 26, 2022                                                                                                                   Page 2

and nearly all of the 10.875% Notes issued under the 10.875% Indenture (the "Cross-Holders"). We are concerned that the Ad Hoc Group is poised to abuse their majority position in the 10.5% Notes to benefit their holding of 10.875% Notes to the general detriment of the 10.5% Notes. Specifically, we believe the Ad Hoc Group will seek to force upon the Company inferior debtor-in-possession financing ("DIP") by objecting to any priming DIP other than a DIP offered by the Ad Hoc Group, even one with economically superior terms. Acceptance of an inferior DIP foisted on the Company by economically conflicted Cross-Holders – who recently augmented their holdings of 10.875% Notes through the Company's supplemental issuance under the 10.875% Indenture – will unnecessarily and improperly dilute the potential recoveries of 10.5% noteholders.

Further, please be advised that as detailed below, the 10.875% Indenture changed the application of proceeds under the 10.5% Indenture in a manner detrimental to 10.5% noteholders, in violation of the 10.5% Indenture. Specifically, Section 9.02 of the 10.5% Indenture expressly requires consent of each 10.5% noteholder adversely affected by a change to the 10.5% Indenture or the intercreditor agreement dated August 2, 2019 (the "2019 ICA") dealing with the application of proceeds of collateral. Section 9.02(d) provides, in relevant part:

> However, without the consent of each Holder affected thereby, an amendment, supplement or waiver under this Section 9.02 may not (with respect to any Notes held by a non-consenting Holder):
>
> . . .
>
> (10) make any change in the provisions in the Intercreditor Agreement or this Indenture dealing with the application of proceeds of Collateral that would adversely affect the Holders.

The 2021 ICA changed the application of proceeds of collateral in a way adverse to all 10.5% noteholders. For example, Section 4.1(a) of the 2019 ICA provides that the application of proceeds of the "Notes Priority Collateral," which, among other collateral, secures the 10.5% Notes, shall be applied to the payment of the 10.5% Notes, second in priority only to the payment of certain costs and expenses related to the exercise of remedies with respect to the collateral.

Section 4.1 of the 2021 ICA changes this priority, stating that proceeds of "Common Collateral," inclusive of the Notes Priority Collateral set forth in the 2019 ICA, shall be applied to the 10.5% Notes only after discharge of the 10.875% Notes. Thus, the change to the application of proceeds of collateral in the 2019 ICA by the 2021 ICA adversely affects the 10.5% noteholders by subordinating them to 10.875% noteholders. On information and belief, the Company and U.S. Bank sought consents only from the Cross-Holders, and did not seek or obtain consent of 10.5% noteholders who did not also hold 10.875% Notes (the "Minority Holders"). Thus, the 2021 ICA and the purported subordination (with respect to the Common Collateral) of the 10.5% Notes pursuant thereto breached the 10.5% Indenture and are ineffective as to non-consenting Minority Holders.

U.S. Bank National Association  
April 26, 2022 Page 3

      Similarly, changes to provisions of the 10.5% Indenture by the Supplemental Indenture that deal with the application of proceeds of collateral in a way that adversely affect the 10.5% noteholders required consent of each 10.5% noteholder, and are ineffective as to non-consenting Minority Noteholders. For example, the Supplemental Indenture changed the definition of Permitted Liens to except the 10.875% Notes from the obligation that liens securing debt issued pursuant to Section 4.07(b)(1) of the Indenture be subject to the 2019 ICA.

      In light of these circumstances, we request, pursuant to Section 6.05 of the 10.5% Indenture, that U.S. Bank decline to follow any directions from the Cross-Holders with respect to the DIP or the Company's bankruptcy filing that would be prejudicial to the rights and recoveries of the Minority Holders.

      We would be happy to address any questions you may have.

Very truly yours,

*/s/ Nelly Almeida*

Nelly Almeida

CC:  
TPC Group Inc.  
Baker Botts L.L.P.  
Simpson Thacher & Bartlett LLP