# Milbank

**AARON L. RENENGER**

1850 K Street NW, Suite 1100  |  Washington, DC 20006
T: 202-835-7505
arenenger@milbank.com  |  milbank.com

June 9, 2022

**VIA ECF**

Hon. Craig T. Goldblatt
United States Bankruptcy Court
District of Delaware
824 North Market Street
3rd Floor, Courtroom 7
Wilmington, DE 19801

      Re:    *In re TPC Group Inc., et al.*, Case No. 22-10493; *Bayside Capital, Inc. and Cerberus Capital Management, L.P. v. TPC Group Inc.*, Adv. Pro. No. 22-50372

Dear Judge Goldblatt:

      We represent Bayside Capital, Inc. ("Bayside") and Cerberus Capital Management, L.P. ("Cerberus," together with Bayside, the "Ad Hoc Group of Non-Consenting Noteholders") in the above-referenced Chapter 11 case and adversary proceeding.  We write in response to TPC Group Inc.'s ("TPC" or the "Debtors") letter motion to compel production of certain documents [Case No. 22-10493, ECF No. 179; Adv. Pro. No. 22-50372, ECF No. 14] (the "Letter Motion").  The document requests at issue in the Letter Motion are attached hereto as Exhibit A.

      TPC seeks broad production of numerous categories of documents which it contends are relevant to the Ad Hoc Group of Non-Consenting Noteholders' pending motion for summary judgment [Adv. Pro. No. 22-50372, ECF No. 10] (the "Summary Judgment Motion") in the adversary proceeding and/or the Debtors' pending DIP motion in the Chapter 11 case [Case No. 22-10493, ECF No. 36] (the "DIP Motion"), both of which are set for hearing on June 29, 2022. After a meet and confer process, the Ad Hoc Group of Non-Consenting Noteholders have agreed to produce documents sufficient to show:  (i) their purchase of the 10.5% Notes[1] (including the dates of purchase and from whom the notes were purchased, to the extent reflected in the documents), (ii) the amount of 10.5% Notes currently held, and (iii) the relationship between Cerberus and Bayside and the respective funds holding the interest in the 10.5% Notes.  In addition, Cerberus and Bayside have agreed to produce non-privileged communications in their

---

[1] Capitalized but undefined terms herein have the meaning given to them in the *Objection of the Ad Hoc Group of Non-Consenting Noteholders to Debtors' Motion for Entry of Interim and Final Orders Approving DIP Financing*, dated June 2, 2022 [Case No. 22-10493, ECF No. 76].

MILBANK LLP

NEW YORK  |  LOS ANGELES  |  WASHINGTON, D.C.  |  SÃO PAULO  |  FRANKFURT
LONDON  |  MUNICH  |  BEIJING  |  HONG KONG  |  SEOUL  |  SINGAPORE  |  TOKYO

possession located after a reasonable search concerning the proposed priming of the 10.5% Notes or the 10.875% Notes by the Ad Hoc Group of Non-Consenting Noteholders' DIP proposals transmitted to TPC. Nonetheless, TPC seeks additional broad categories of documents as set forth in their Letter Motion:

1. Presentations and documents made by Cerberus and Bayside for or presented to their investment committees;

2. Documents and communications relating to the ability of the 10.875% Notes to prime the 10.5% Notes including communications with third parties;

3. Documents and communications relating to the pricing of and valuation of the 10% in aggregate face value of 10.5% Notes purportedly held by Cerberus and Bayside;

4. Internal communications regarding analyses of the validity and propriety of the DIP proposals Cerberus and Bayside offered to TPC, as relates to the Intercreditor Agreement; and

5. Evidence of Cerberus's and Bayside's financial wherewithal to provide certain alternative DIP financing as a basis to challenge the existing proposed DIP terms.

None of these categories include documents relevant to the Summary Judgment Motion or the DIP Motion, as discussed below.

### I. Applicable Law

Rule 26(b)(1) of the Federal Rules of Civil Procedure, made applicable to the adversary proceeding pursuant to Rule 7026 of the Federal Rules of Bankruptcy Procedure, allows discovery of any nonprivileged matters "relevant to any party's claim or defense and proportional to the needs of the case, considering . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." "Once an objection has been raised as to relevancy, the party seeking the discovery bears the burden of demonstrating the relevance of the sought information to the claims, defenses, or the subject matter of the litigation." *Miller v. Am. Capital, Ltd. (In re NewStarcom Holdings, Inc.)*, 514 B.R. 394, 400 (Bankr. D. Del. 2014) (denying motion to compel because the discovery sought was not relevant).

## II. Extrinsic Evidence of the Ad Hoc Group of Non-Consenting Noteholders' Interpretation of the Relevant Debt Documents is Irrelevant and Not Discoverable (Document Request Categories 1, 2, and 4)[2]

TPC seeks documents related to Cerberus's and Bayside's interpretation of the indentures and intercreditor agreements at issue in the Summary Judgment Motion and/or DIP Motion, including (i) information in investment committee memoranda that would show "the extent to which [Bayside and Cerberus] knew of the priming issues they now complain of and had actively considered those issues and analyzed them" (Letter Motion at 3); (ii) documents "relating to the ability of the 10.875% Notes to prime the 10.5% [N]otes" (Letter Motion at 2); and (iii) communications regarding whether Cerberus's and Bayside's DIP proposal violated the governing indentures and/or intercreditor agreements (*id.*).

In the Summary Judgment Motion, the Ad Hoc Group of Non-Consenting Noteholders contends that certain amendments to the Original Indenture breached the terms of the Original Indenture. The Debtors have filed a counterclaim for declaratory judgment [Adv. Pro. No. 22-50372, ECF No. 15] and a motion for summary judgment [Adv. Pro. No. 22-50372, ECF No. 16] (the "<u>Debtors' Summary Judgment Motion</u>") in the adversary proceeding, contending that the Original Indenture's "no-action clause" prohibits the Non-Consenting Noteholders from initiating the adversary proceeding. The arguments presented in both the Summary Judgment Motion and the Debtors' Summary Judgment Motion are purely legal, requiring the Court to review various contractual provisions and determine whether undisputed conduct has breached the contractual provisions.

Each of the requests at issue in document request categories one, two, and four, however, seek extrinsic evidence regarding the meaning of the contractual provisions at issue. Extrinsic evidence is relevant only if the provisions at issue are ambiguous, which neither side here has contended.

Under New York law—the law applicable to the contracts at issue—extrinsic evidence should be considered only when a contract is ambiguous. *See Brad H. v. City of N.Y.*, 951 N.E.2d 743, 746 (N.Y. 2011) ("Ambiguity is determined within the four corners of the document; it cannot be created by extrinsic evidence that the parties intended a meaning different than that expressed in the agreement and, therefore, extrinsic evidence may be considered only if the agreement is ambiguous.") (internal quotation marks and citation omitted); *see also Modern Art Servs., LLC v. Fin. Guar. Ins. Co.*, 79 N.Y.S.3d 4, 6 (N.Y. App. Div. 1st Dep't 2018) ("[A] contract is construed in accord with the parties' intent, and . . . the best evidence of the parties' intent is what they say in their writing.") (internal quotation marks and citation omitted); *World Ambulette Transp., Inc. v. Kwan Haeng Lee*, 78 N.Y.S.3d 137, 141-42 (N.Y. App. Div. 2d Dep't

---

[2] Document Request Nos. 1, 14-18, 21, and 30. *See* Exhibit A.

Hon. Craig T. Goldblatt
June 9, 2022                                                                                                                        Page 4

2018) (holding that trial court should not have considered extrinsic evidence in interpreting an agreement because the agreement was unambiguous).[3]

Further, even if the Court finds the contracts are ambiguous, Bayside's or Cerberus's particular understanding or analysis of those contracts has no bearing on the Court's interpretation. That is because extrinsic evidence is only used to determine the "meaning ***intended by the parties during the formation of the contract***." *Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) (emphasis added) (internal quotation marks and citation omitted); *Wansdown Props. Corp. N.V. v. 29 Beekman Corp. (In re Wansdown Props. Corp. N.V.)*, 620 B.R. 487, 497 (Bankr. S.D.N.Y. 2020) ("If the contract is ambiguous, 'the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract.'") (quoting *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 275-76 (2d Cir. 2000)). Bayside and Cerberus were not involved in the drafting or formation of any of the relevant contracts. What a purchaser of notes may think about the meaning of the terms of an indenture or intercreditor agreement at or after the time of purchase—in this case, nearly two years after the documents were drafted—is entirely irrelevant to determining what the drafters of the documents intended at the time.[4]

TPC claims that the fact that the adversary proceeding is a matter of pure contract interpretation is a "strawman." They are wrong. Under New York law, the meaning of a contract "***must*** be discerned under several cardinal principles of contractual interpretation." *Brad H.*, 951 N.E.2d at 746 (emphasis added). The Court should not ignore those cardinal principles so TPC can go on a fishing expedition for plainly irrelevant documents.

Finally, TPC mischaracterizes Bayside's and Cerberus's position with respect to application of the attorney-client privilege. Letter Motion at 4. Bayside and Cerberus do not assert a blanket privilege objection to *any* document related to interpretation of the intercreditor agreements and indentures. Rather, given that the requested documents will be overwhelmingly, if not exclusively, privileged, collecting and reviewing such documents is surely disproportional

---

[3] TPC claims that Bayside's and Cerberus's communications with regard to whether their DIP proposals violated the indentures or intercreditor agreements are "assuredly relevant to whether the DIP Proposal was actionable or was not." Letter Motion at 4. Nonsense. As relevant to the DIP Motion, Bayside's and Cerberus's DIP proposals either violated the intercreditor agreements and indentures, or they did not. That question is purely legal, and is not appropriately informed by Bayside's and Cerberus's own internal analysis on the subject.

[4] TPC cites *Brooks-Bey v. Reid*, No. CIV. A. 91-2726, 1992 WL 10506 (E.D. Pa. Jan. 21, 1992), arguing that it stands for the proposition that prior actions showing motive or intent are relevant to the matters before the Court. Letter Motion at 3. *Brooks-Bey* does not concern contract interpretation and is inapposite. *Brooks-Bey* is a civil rights case in which the plaintiff alleged that his transfer from one prison to another violated his due process and equal protection rights because it was retaliation for filing lawsuits against prison staff. *Brooks-Bey*, 1992 WL 10506, at *1. In that case, "prior actions tending to show motive are relevant" because the court was determining whether prison staff retaliated against the plaintiff. *Id.* at *3. In contrast, prior actions of Bayside and Cerberus have no impact on the meaning of the relevant debt documents and therefore no relation to any claims or defenses asserted in the adversary proceeding.

Hon. Craig T. Goldblatt
June 9, 2022
Page 5

to the needs of the disputes set for hearing on June 29 given the non-relevance of the material. *See* Fed. R. Civ. P. 26(b)(1) (stating that a court must balance the need for discovery with "the importance of the discovery in resolving the issues"); *Apex Fin. Options, LLC v. Gilbertson*, MC 21-023-LPS-SRF, 2021 WL 965509, at *5 (D. Del. Mar. 15, 2021) (finding plaintiff not entitled to discovery when document request was "not proportional to the needs of the case") (internal quotation marks omitted); *Goodman v. Burlington Coat Factory Warehouse Corp.*, 292 F.R.D. 230, 233 (D.N.J. 2013) ("There comes a point where the marginal returns on discovery do not outweigh the concomitant burden, expense, and bother.").

### III. The Ad Hoc Group of Non-Consenting Noteholders' Internal Valuation of the 10.5% Notes is Irrelevant and Not Discoverable (Document Request Category 3)[5]

Documents concerning Bayside's or Cerberus's internal valuation of the 10.5% Notes, including price paid, have no relevancy to the matters set for hearing on June 29.

This Court has, on multiple occasions, denied discovery of a creditor's internal valuations because such valuations are irrelevant unless the issue of valuation is placed directly at issue by the creditor, such as if the creditor is alleging constructive fraudulent transfer or challenging valuation at a hearing to confirm a plan of reorganization. *See CSC Tr. Co. of Del. v. Energy Future Intermediate Holdings Co. LLC (In re Energy Future Holdings Corp.)*, 513 B.R. 651, 653 (Bankr. D. Del. 2014) (concluding that "information regarding a debtor's valuation and solvency is not obtainable from third parties who have not taken a clear position with regard to the debtor's solvency"); Exhibit B, Transcript of Hearing before the Honorable Christopher S. Sontchi dated August 17, 2015, *In re Molycorp, Inc., et al.*, No. 15-11357 (Bankr. D. Del.) at 147:4-9 (denying request for discovery of creditors' internal valuation projections due to lack of relevance and holding "[a]s I stand by, my comments a year ago or so in EFH about internal valuation, generally, being unavailable and not favored, there are certainly circumstances in which it could arise and be relevant. I don't see them having been identified at this time . . . ."); Exhibit C, Transcript of Telephonic Conference before the Honorable Brendan L. Shannon dated May 2, 2014, *In re The Dolan Company et al.*, No. 14-10614 (Bankr. D. Del.) at 19:13-20:14 (denying discovery of valuation documents because "[creditor's] analysis or evaluation of the . . . debtor, I don't believe is an appropriate area of inquiry"); Exhibit D, Transcript of Telephonic Hearing Regarding Discovery Disputes Before the Honorable Karen Owens dated May 11, 2020, *In re Quorum Health Corp., et al.*, No. 20-10766 (Bankr. D. Del.) at 18:12-19:25 (agreeing that "the lender's opinion of value [of the debtor] is irrelevant"). Valuation is not at issue here.

TPC claims that it needs the amount Bayside and Cerberus paid for their interest in the 10.5% Notes and their internal valuations of the 10.5% Notes to "determine what Plaintiffs knew going into their proposed purchase, what they considered their risk was, and how much was at stake." Letter Motion at 4. But TPC does not explain how Bayside's and Cerberus's knowledge

---
[5] Document Request Nos. 2, 7, and 10 fall into this category of documents. *See* Exhibit A.

going into the purchase of 10.5% Notes, their consideration of the risks associated with purchasing 10.5% Notes, and the amount at stake in purchasing the notes has any relation to the issues in the summary judgment motions. And the reason is simple: Bayside's and Cerberus's analysis of the value of the 10.5% Notes and the price they paid for their interest in the 10.5% Notes have no bearing whatsoever on whether the 2021 Transaction Documents breached the Original Indenture or whether the initiation of the adversary proceeding ran afoul of the Original Indenture's no-action clause.

### IV. Additional DIP-Related Documents are Irrelevant (Document Request Category 5)[6]

Cerberus and Bayside have each agreed to produce non-privileged communications in their possession located after a reasonable search concerning the proposed priming of the 10.5% Notes or the 10.875% Notes by the Cerberus/Bayside DIP proposals transmitted to TPC. The remainder of TPC's DIP-related document requests are irrelevant, pose an undue burden, and are not proportional to the needs of the case.

TPC seeks documents concerning Bayside's or Cerberus's ability to complete transactions that are not included in their DIP proposals and have not been proposed by any party. Document Request Nos. 25 and 26 seek documents related to Bayside's or Cerberus's possible acquisition of substantially all of TPC's assets and debt. Document Request No. 29 seeks documents concerning Bayside's or Cerberus's financial wherewithal to undertake a refinancing of the 10.5% Notes or the 10.875% Notes. TPC contends that "discovery into Plaintiffs' ability to provide such alternatives would undoubtedly be relevant to the actionability of a proposal containing such terms." Letter Motion at 5. But Bayside and Cerberus have not proposed to acquire substantially all of TPC's assets and debt. Nor has TPC proposed to undertake a refinancing of the 10.5% Notes or the 10.875% Notes. TPC's demand for discovery regarding Bayside's and Cerberus's "financial ability" to undertake transactions they have not proposed and that are not before the Court smacks of an effort to impose undue burden for no corresponding benefit.

For the reasons articulated herein, the Ad Hoc Group of Non-Consenting Noteholders respectfully requests that Your Honor deny TPC's letter motion to compel production of documents in response to Document Request Nos. 1, 2, 7, 10, 14-18, 20, 21, 25, 26, 29 and 30.

Respectfully submitted,

/s/ *Aaron L. Renenger*
Aaron L. Renenger

---

[6] Document Request Nos. 20, 25, 26, and 29. *See* Exhibit A.