# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| TPC GROUP INC, *et al.,* | Case No. 22-10493 (CTG) |
| Debtors,[1] | Jointly Administered |

| | |
|---|---|
| BAYSIDE CAPITAL, INC. and CERBERUS CAPITAL MANAGEMENT, L.P | Adv. Pro. No. 22-50372 (CTG) |
|     Plaintiffs-Counterclaim Defendants, v. | |
| TPC GROUP INC., | |
|      Defendant-Counterclaimant, | |
| -and- | |
| THE AD HOC NOTEHOLDER GROUP, | |
|      Intervenor Defendant | |

---

[1] The Debtors in these chapter 11 cases, and the last four digits of their federal tax identification numbers, are: TPC Group Inc. (3618); TPC Holdings, Inc. (7380); TPC Group LLC (8313); Texas Butylene Chemical Corporation (7440); Texas Olefins Domestic International Sales Corporation (4241); TPC Phoenix Fuels LLC (9133); Port Neches Fuels, LLC (1641); and TP Capital Corp. (6248). Each Debtor's corporate headquarters and mailing address is 500 Dallas St., Suite 2000, Houston, Texas 77042.

**PLAINTIFFS-COUNTERCLAIM DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT-COUNTERCLAIMANT'S MOTION TO DISMISS, IN SUPPORT OF PLAINTIFFS-COUNTERCLAIM DEFENDANTS' MOTION TO STRIKE OR DISMISS DEFENDANT-COUNTERCLAIMANT'S INITIAL COUNTERCLAIM, IN OPPOSITION TO DEFENDANT-COUNTERCLAIMANT'S MOTION FOR SUMMARY JUDGMENT, AND IN SUPPORT OF PLAINTIFFS-COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS DEFENDANT-COUNTERCLAIMANT'S NEW COUNTERCLAIM**

# TABLE OF CONTENTS

**Pages**

NATURE AND STAGE OF THE PROCEEDINGS ......................................................................1

PRELIMINARY STATEMENT ................................................................................................2

STATEMENT OF FACTS ........................................................................................................4

      A.     The Senior Secured Notes............................................................................4

      B.     Plaintiffs' Sacred Rights ..............................................................................5

      C.     The Usurping Notes .....................................................................................6

      D.     Plaintiffs' Notice of Breaches to TPC .........................................................7

      E.     TPC's Bankruptcy and the Cross-Holder DIP Proposal ...............................7

      F.     Plaintiffs Sue to Vindicate Their Sacred Rights .........................................8

LEGAL STANDARD................................................................................................................8

ARGUMENT ...........................................................................................................................9

I.     The Court Should Deny TPC's Motion to Dismiss ...............................................9

      A.     The No-Action Clause Does Not Bar Plaintiffs' Suit to Vindicate Their
             Individual Consent Rights...........................................................................9

      B.     TPC's Alternative Interpretation of the No-Action Clause Is Foreclosed by
             New York Law..........................................................................................13

II.    The Court Should Strike or Dismiss TPC's Initial Counterclaim as Procedurally
      Improper.......................................................................................................................15

III.   The Court Should Deny TPC's Motion for Summary Judgment as Procedurally
      Improper.......................................................................................................................16

IV.   The Court Should Dismiss TPC's New Counterclaim ........................................17

CONCLUSION.......................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akanthos Capital Mgmt., LLC v. CompuCredit Holdings Corp.*,
    677 F.3d 1286 (11th Cir. 2012) .......................................................................... 13

*Alleco Inc. v. IBJ Schroder Bank & Tr. Co.*,
    745 F. Supp. 1467 (D. Minn. 1989) .................................................................... 13

*Allied Med. Assocs. v. State Farm Mut. Auto. Ins. Co.*,
    2009 WL 839063 (E.D. Pa. Mar. 26, 2009) ....................................................... 15

*Bernstein v. IDT Corp.*,
    582 F. Supp. 1079 (D. Del. 1984) ....................................................................... 15

*Birn v. Childs Co.*,
    37 N.Y.S.2d 689 (Sup. Ct. 1942) ................................................................... 12, 13

*Blackrock Balanced Capital Portfolio (FI) v. U.S. Bank Nat'l Ass'n*,
    165 A.D.3d 526 (1st Dep't 2018) .................................................................. 11, 13

*Brady v. UBS Fin. Servs. Inc*,
    538 F.3d 1319 (10th Cir. 2008) .......................................................................... 12

*Cortlandt St. Recovery Corp. v. Bonderman*,
    31 N.Y.3d 30 (2018) .................................................................................... 10, 11

*Cypress Assocs., LLC v. Sunnyside Cogeneration Assocs. Project* .............................. 11

*Eaton Vance Mgmt. v. Wilmington Sav. Fund Soc'y, FSB*,
    171 A.D.3d 626 (1st Dep't 2019) ............................................................. 9, 10, 11

*Eaton Vance Mgmt. v. Wilmington Sav. Fund Soc'y, FSB*,
    Index No. 654397/2017 (N.Y. Sup. Ct.) ............................................................. 10

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
    837 F. Supp. 2d 162 (S.D.N.Y. 2011) ................................................................ 12

*ERC 16W Ltd. P'ship v. Xanadu Mezz Holdings LLC*,
    95 A.D.3d 498 (1st Dep't 2012) .................................................................... 14, 15

*Feder v. Union Carbide Corp.*,
    530 N.Y.S.2d 165 (2d Dep't 1988) ..................................................................... 12

*Feldbaum v. McCrory Corp.*,
    1992 WL 119095 (Del. Ch. June 2, 1992) ................................................. 9, 10, 11

*Fisher v. USAA Casualty Ins. Co.*,
  973 F.2d 1103 (3d Cir. 1992) ........................................................................... 10

*Galli v. Metz*,
  973 F.2d 145 (2d Cir. 1992) .............................................................................. 14

*Holland v. Simon Prop. Grp., Inc.*,
  495 F. App'x 270 (3d Cir. 2012) ....................................................................... 17

*In re Forever 21, Inc.*,
  623 B.R. 53 (Bankr. D. Del. 2020) ...................................................................... 8

*In re IT Grp., Inc.*,
  332 B.R. 673 (Bankr. D. Del. 2005) ..................................................................... 8

*ITL Int'l, Inc. v. Walton & Post, Inc.*,
  2011 WL 13055064 (S.D. Fla. June 6, 2011) .................................................... 16

*Lawyers' Fund for Client Prot. of State of N.Y. v. Bank Leumi Trust Co. of N.Y.*,
  94 N.Y.2d 398 (2000) ........................................................................................ 14

*Mayo v. Royals Ins. Co. of Am.*,
  242 A.D.2d 944 (4th Dep't 1997) ...................................................................... 12

*Meierhenry Sargent LLP v. Williams*,
  2019 WL 2105986 (D.S.D. May 14, 2019) ........................................................ 16

*Microsoft Corp. v. Ion Techs. Corp.*,
  484 F. Supp. 2d 955 (D. Minn. 2007) ................................................................ 16

*Mobley v. Safeco Ins. Co. of Ill.*,
  2012 WL 12916444 (M.D. Fla. Apr. 12, 2012) .................................................. 16

*Peak Partners, LP v. Republic Bank*,
  191 F. App'x 118 (3d Cir. 2006) ........................................................................ 13

*QFS Transp., LLC v. Huguely*,
  2022 WL 1443433 (S.D. Ohio May 6, 2022) ..................................................... 16

*Quadrant Structured Prods. Co., Ltd. v. Vertin*,
  23 N.Y.3d 549 (2014) ...................................................................... 9, 10, 11, 12

*SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.*,
  934 F. Supp. 2d 516 (E.D.N.Y. 2013) ............................................................... 13

*Sevi v. Israel Disc. Bank of N.Y.*,
  2014 WL 12861831 (S.D. Fla. July 8, 2014) ..................................................... 16

*Skeans v. Key Commercial Fin., LLC.*,
     2022 WL 605718 (D. Del. Jan. 24, 2022).................................................................16

**Rules**

Fed. R. Bankr. P. 7007.........................................................................................................15

Fed. R. Bankr. P. 7012......................................................................................................8, 17

Fed. R. Bankr. P. 7013.........................................................................................................15

Fed. R. Bankr. P. 7056...........................................................................................................8

Fed. R. Civ. P. 7...................................................................................................................15

Fed. R. Civ. P. 12..........................................................................................................1, 8, 17

Fed. R. Civ. P. 13.................................................................................................................15

Fed. R. Civ. P. 56...................................................................................................................8

## NATURE AND STAGE OF THE PROCEEDINGS

1.      On June 2, 2022, Plaintiffs-Counterclaim Defendants Cerberus Capital Manage-

ment, L.P. ("Cerberus") and Bayside Capital, Inc. ("Bayside," and together with Cerberus, "Plain-

tiffs") commenced this adversary proceeding against Defendant-Counterclaimant TPC Group Inc.

("TPC" or "Debtor") by filing their Complaint for Declaratory Judgment (the "Complaint"). A.D.I.

3, 9.[2] On June 9, 2022, TPC moved to dismiss the Complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6), on the ground that Plaintiffs had not complied with the Original Indenture's

No-Action Clause. A.D.I. 18, 19 (the "TPC MTD"). The very same day, TPC filed a Counterclaim

for Declaratory Judgment (the "Initial Counterclaim") and a Motion for Summary Judgment on its

Counterclaim (the "TPC MSJ"), seeking a Declaration that Plaintiffs' lawsuit violated the No-

Action Clause in the Original Indenture—the same ground on which it had based its Motion to

Dismiss, A.D.I. 15, 16, 17.

2.      On June 16, 2022, Plaintiffs informed TPC that its counterclaim was procedurally

improper as it was not stated in an answer, and noted the inefficiency of litigating a Motion to

Dismiss and also a Motion for Summary Judgment on the Initial Counterclaim on exactly the same

grounds. TPC told Plaintiffs that they would not change their filings. Then, at about 5:30 pm on

June 22, 2022—the day Plaintiffs' opposition to the TPC's Motion for Summary Judgment on the

Initial Counterclaim was due—TPC filed an Answer containing a Counterclaim ("New Counter-

claim") identical to its Initial Counterclaim. A.D.I. 47. TPC did not withdraw its pending Motion

for Summary Judgment or file a new motion for summary judgment on its New Counterclaim.

---

[2] Capitalized terms not otherwise defined have the same meaning as in the Complaint. "D.I." refers to the docket in the main bankruptcy case (Case No. 22-10493 (CTG)); "A.D.I." refers to the docket in this adversary proceeding.

3.    Plaintiffs now respectfully submit this Consolidated Memorandum of Law in Opposition to Defendant-Counterclaimant's Motion to Dismiss, in Support of their Motion to Strike or Dismiss Defendant-Counterclaimant's procedurally-improper Initial Counterclaim, in Opposition to Defendant-Counterclaimants' Motion for Summary Judgment, and in Support of Plaintiffs-Counterclaim Defendants' Motion to Dismiss the New Counterclaim.[3]

## PRELIMINARY STATEMENT

4.    In 2021, TPC "primed" its Minority Holders by issuing Usurping Notes that purportedly subordinated the Senior Secured Notes it had issued in 2019, violating sacred rights enshrined in the Original Indenture. TPC issued more Usurping Notes shortly before it filed for bankruptcy protection this year in further breach of the Original Indenture. In the main bankruptcy proceeding, TPC asks the Court to further exacerbate these breaches via $323 million of debtor-in-possession financing that would roll up $238 million of Usurping Notes held by the Cross Holders, locking in the subordination of the Senior Secured Notes.

5.    TPC's priming scheme violated the Original Indenture. Section 9.02(d) of that contract prohibits ten categories of "amendment, supplement, or waiver" affecting the Original Indenture or the related 2019 Intercreditor Agreement that would "adversely affect the Holders" unless such amendment, supplement, or waiver has "the consent of each Holder affected thereby[.]" In particular, Section 9.02(d)(10) precludes any amendment or supplement that would change the provisions of the Original Indenture or 2019 Intercreditor Agreement "**dealing with** the application of proceeds of Collateral" (emphasis added). This sacred right protects the payment waterfall that is one of the primary determinants of the value of the notes. Yet TPC purported to amend and

_____

[3] The substance of Debtor's Motion for Summary Judgment is the same as its Motion to Dismiss.

supplement those agreements to subordinate the Senior Secured Notes to $204.5 million of Usurping Notes—without the Minority Holders' consent. Because the Minority Holders did not consent, Plaintiffs filed this suit, asking the Court to declare the amendments void and that the Senior Secured Notes rank above the Usurping Notes.

6.      TPC asks the Court to dismiss the Complaint and grant TPC summary judgment on the sole basis that Plaintiffs have not complied with Section 6.06 of the Original Indenture (the "No-Action Clause"). TPC MTD 5. The No-Action Clause prevents Holders from pursuing remedies "with respect to [the Original Indenture] or the [Senior Secured Notes]" unless Holders of at least 25% in aggregate principal amount first ask the Trustee to bring such a suit, but it also lets Holders of a majority of such principal amounts block the same suit.

7.      The No-Action Clause does not apply here. Under controlling New York law, no-action clauses prevent holders from bringing individual suits to enforce collective rights belonging **to all holders as a group** that seek remedies to be ratably distributed among them; however, they do not bar holders from suing to vindicate individual consent rights, as Plaintiffs do here. That is especially true where, as here, it would be futile for Plaintiffs to ask other holders to support a lawsuit to invalidate amendments supported by those same holders or to ask the Trustee to challenge a transaction it may be liable for approving. Section I.A., *infra*.

8.      New York law does not tolerate TPC's alternative reading. Courts must give meaning to all contract terms, yet TPC would let a majority of holders block minority holders from enforcing their individual consent rights, thus gutting those rights entirely. Courts also must read contracts to be commercially reasonable, yet TPC would prevent minority holders from ever enforcing their individual consent rights against an amendment supported by the majority—letting

the majority change the minority's rights whenever it chose—something no rational minority investor would ever agree to. Section I.B., *infra*.

9.    The Court should also strike or dismiss TPC's Initial Counterclaim and deny its related Motion for Summary Judgment on that Counterclaim. The Federal Rules of Civil Procedure, which apply here, expressly require that counterclaims be stated in a "pleading," yet TPC opted not to file an answer and instead filed its Initial Counterclaim as a standalone document. Precedent requires that the Court strike or dismiss this Counterclaim, not stated in a pleading, as a procedural nullity. Section II, *infra*. Caselaw likewise requires that the Court deny TPC's Motion for Summary Judgment on this void Counterclaim. Doing so would not prejudice TPC, which has teed up in its Motion to Dismiss the same issues regarding the No-Action Clause that it makes in its improper Motion for Summary Judgment. There is no need for the parties to brief, or the Court to consider, an additional motion on the same issues. Section III, *infra*.

10.    The Court should dismiss TPC's New Counterclaim for failure to state a claim for the same reasons it should deny TPC's Motion to Dismiss. Section IV, *infra*.

## STATEMENT OF FACTS

### A.    The Senior Secured Notes

11.    In August 2019, pursuant to the Original Indenture, TPC issued $930 million in principal of 10.5% Senior Secured Notes. *See* Declaration of Robert A. Del Genio in Support of Debtors' Chapter 11 Petitions and First Day Motions [D.I. 27] ("Del Genio Decl.") ¶ 38. Under the Original Indenture, TPC was prohibited from incurring additional debt unless it was equal or junior in priority to the Senior Secured Notes. A.D.I. 17, Ex. A § 4.07(b)(1). At the same time, U.S. Bank, as trustee and collateral agent for the Senior Noteholders, and Bank of America, N.A., as administrative agent and collateral agent for the ABL Lenders, entered the 2019 Intercreditor Agreement. Declaration of Oscar S. Shine, dated June 22, 2022 ("Shine Dec."), Ex. A.

4

**B.      Plaintiffs' Sacred Rights**

12.      Some amendments of the Original Indenture and related Security Documents are permitted under the Original Indenture without the consent of all holders. Article 9 of the Original Indenture describes the varying levels of consent required to amend or supplement documents relevant to the Senior Secured Notes, including the Original Indenture and the 2019 Intercreditor Agreement, or to waive rights therein. A.D.I. 17, Ex. A, Original Indenture Article 9. Some provisions can be amended without holder consent, others only with consent of a majority of holders, others only with a supermajority, and still others only with consent of __each__ Senior Noteholder adversely affected by the amendment. *Id.*

13.      Provisions that cannot be amended without the consent of each affected holder are known as "sacred rights," because they grant each holder an individual right to prevent the amendment. Section 9.02(d) identifies ten sacred rights—each concerning rights to, or priority of, payment—that cannot be amended without the consent of "each Holder affected thereby." A.D.I. 17, Ex. A.

14.      The right to block amendments affecting the application of collateral proceeds (the payment "waterfall") is a sacred right. Section 9.02(d)(10) of the Original Indenture provides:

> __[W]ithout the consent of each Holder affected thereby__, an amendment, supplement or waiver under this Section 9.02 may not (with respect to any [Senior Secured] Notes held by a non-consenting Holder): . . .
>
> (10) __make any change__ in the provisions in the [2019 Intercreditor Agreement] or this Indenture dealing with __the application of proceeds of Collateral__ that would adversely affect the Holders.

*Id.* (emphasis added). Section 4.1(a) of the 2019 Intercreditor Agreement, "Application of Proceeds of Senior Collateral," provides that, subject only to payment of certain costs and expenses, the Senior Noteholders get paid first from the proceeds of the Notes Priority Collateral and second

from the ABL Facility Priority Collateral. Shine Dec., Ex. A § 4.1(a). Amendments thus may not affect the Senior Noteholders' ratable claim on the Collateral proceeds without the consent of each affected Holder.

15.     Under the Original Indenture, any liens securing debt issued under Section 4.07(b)(1), one of the Original Indenture's permitted debt baskets, must be "subject to the provisions of" the 2019 Intercreditor Agreement—including the Section 4.1(a) waterfall giving the Senior Secured Notes senior access to the proceeds of the Notes Priority Collateral and junior access to the proceeds of the ABL Facility Priority Collateral. A.D.I. 17, Ex. A.

C.     **The Usurping Notes**

16.     In February 2021, TPC issued $153 million in principal of 10.875% Usurping Notes pursuant to a new indenture. Del Genio Decl. ¶ 35; A.D.I. 17, Ex. B. Shortly before declaring bankruptcy in 2022, TPC issued another approximately $51.5 million in principal of Usurping Notes. Del Genio Decl. ¶ 36. To do so, TPC and U.S. Bank N.A. entered the Supplemental Indenture, purporting to amend the Original Indenture, and U.S. Bank N.A. (as Senior Priority Agent and Junior Priority Agent) entered the 2021 Intercreditor Agreement. A.D.I. 17, Ex. B; Shine Dec., Ex. B.

17.     These purported amendments would change the application of Collateral proceeds to subordinate the Senior Secured Notes behind the Usurping Notes. Shine Dec., Ex. B §§ 2.1, 4.1, 8.17(b); A.D.I. 17, Ex. B §§ 1.01, 4.07(d), 12.01(c). Instead of being the first notes in line to receive Collateral proceeds, the Senior Secured Notes would now be in second position, behind approximately $205 million of Usurping Notes. In addition, if the Cross-Holder DIP Proposal is approved, the Senior Secured Notes would be in second position behind up to $323 million. D.I. 76 ¶ 1.

18.     TPC did not obtain the consent of all Senior Noteholders before amending the Original Indenture and issuing the Usurping Notes. Shine Dec., Ex. C. It obtained consent from only a majority—the Ad Hoc Group of Cross-Holders—the members of which now hold a majority of the Senior Secured Notes and the Usurping Notes.[4]

**D.      Plaintiffs' Notice of Breaches to TPC**

19.     On March 31, 2022, counsel for the Ad Hoc Group of Non-Consenting Noteholders notified TPC's counsel in writing that TPC had violated Section 9.02(d)(10) of the Original Indenture. Shine Dec., Ex. D. TPC's counsel denied that TPC had breached 9.02(d)(10). On April 26, 2022, counsel for the Ad Hoc Group of Non-Consenting Noteholders wrote to the indenture trustee for the Senior Secured Notes (the "<u>Trustee</u>"), describing TPC's breaches, and requesting that the Trustee not take instruction from the Usurping Noteholders. A.D.I. 17, Ex. D.

**E.      TPC's Bankruptcy and the Cross-Holder DIP Proposal**

20.     On June 1, 2022, TPC and some of its affiliates filed a petition for relief under Chapter 11 of the Bankruptcy Code in this Court. D.I. 1. At the same time, TPC filed a Motion for Entry of Interim and Final Orders to approve the Cross-Holder DIP Proposal, which purports to allow $238 million of Usurping Notes to be rolled-up in to $323 million of debtor-in-possession financing. *See* D.I. 36. If granted, the Cross Holder DIP would lock in the Usurping Notes' subordination of the Senior Secured Notes and would shift value from the Ad Hoc Group of Non-Consenting Noteholders to the Usurping Noteholders. D.I 76 ¶ 3.

---

[4] The consents TPC obtained were not valid because, contrary to the requirements of the Original Indenture, it obtained them from beneficial noteholders, not record noteholders. *See* Shine Dec., Ex. C.

**F.      Plaintiffs Sue to Vindicate Their Sacred Rights**

21.      On June 1, 2022, Plaintiffs commenced this adversary proceeding, seeking decla-
rations that TPC breached Section 9.02(d)(10) of the Original Indenture; that the 2021 Transaction
Documents are without force to the extent they would change the application of Collateral pro-
ceeds under the Original Indenture and the 2019 Intercreditor Agreement in a manner adversely
affecting Senior Noteholders; that the application of proceeds of Collateral securing the Senior
Secured Notes held by members of the Ad Hoc Group of Non-Consenting Noteholders must be
determined solely by the Original Indenture and the 2019 Intercreditor Agreement; and that the
consents obtained by TPC in connection with the 2021 Transaction Documents and the Usurping
Notes are not valid. *See generally* Complaint ¶¶ 46–63.

22.      The next day, the Ad Hoc Group of Non-Consenting Noteholders filed an objection
to TPC's motion for approval of the Cross-Holder DIP Proposal. D.I. 76. In addition to objecting
to the proposal on its own terms, they argue that the Cross-Holder DIP Proposal is based on the
false assumption that the Usurping Notes are senior to the Senior Secured Notes, when in fact the
amendments purporting to subordinate the latter to the former are invalid. *Id*. at ¶ 23.

## LEGAL STANDARD

23.      On a motion under Rule 12(b)(6), made applicable by Federal Rule of Bankruptcy
Procedure 7012, "the allegations in the complaint must be construed 'in the light most favorable
to the plaintiff,'" and the complaint will only be dismissed where the allegations do not "state a
claim for relief that is plausible on its face." *In re Forever 21, Inc*., 623 B.R. 53, 58 (Bankr. D.
Del. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

24.      Under Rule 56(c), summary judgment should be denied unless the moving party
shows "that there is no genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (made applicable by Federal Rule of Bankruptcy Procedure 7056); *In re IT Grp., Inc.*, 332 B.R. 673, 675 (Bankr. D. Del. 2005).

## ARGUMENT

### I.    The Court Should Deny TPC's Motion to Dismiss

25.    TPC asks the Court to dismiss the Complaint on the sole basis that Plaintiffs have not complied with the No-Action Clause. TPC MTD 5. In relevant part, Section 6.06(a) provides that "[a] Holder may pursue a remedy with respect to [the Original Indenture] or the Notes only if" Holders of at least 25% in aggregate principal amount of the Senior Secured Notes ask the Trustee to pursue the remedy, the Trustee declines, and a Holders of a majority of aggregate principal amount "do not give the Trustee a written direction inconsistent with such request." A.D.I. 17, Ex. A. Section 6.05 provides that such a majority may direct the Trustee in seeking any remedy or exercising any power available to the Trustee. *Id.*

26.    TPC's motion is meritless. Under New York law—which the parties agree governs the Original Indenture, TPC MTD 5—no-action clauses do not bar noteholders from enforcing their individual consent rights, especially when complying with such a clause would be futile. Section I, *infra*. New York law also requires that provisions have meaning and contracts be commercially reasonable, yet TPC's alternative reading of the No-Action Clause would result in individual noteholders having purely illusory consent rights that majority holders could always prevent them from enforcing. Section II, *infra*.

### A.    The No-Action Clause Does Not Bar Plaintiffs' Suit to Vindicate Their Individual Consent Rights

27.    Adopting the reasoning of the Delaware Chancery Court in *Feldbaum v. McCrory Corp.*, New York's Court of Appeals has held that "the primary purpose of a no-action clause … is to protect issuers from the expense involved in defending individual lawsuits that are either

frivolous or otherwise not in the economic interest of the corporation and its creditors." *Quadrant Structured Prods. Co., Ltd. v. Vertin*, 23 N.Y.3d 549, 565 (2014) (citing and quoting *Feldbaum v. McCrory Corp.,* 1992 WL 119095 at *7 (Del. Ch. June 2, 1992)). By delegating "the right to bring a suit enforcing rights of bondholders" to a trustee in the first instance, these clauses "ensure that the proceeds of any litigation actually prosecuted will be shared ratably by all bondholders." *Id.* at 566 (citing *Feldbaum*, 1992 WL 119095 at *7 ("So long as the suits to be dismissed seek to enforce rights shared ratably by all bondholders, they should be prosecuted by the trustee.")); *see also Cortlandt St. Recovery Corp. v. Bonderman*, 31 N.Y.3d 30, 43-44 (2018) (quoting *Quadrant* and *Feldbaum*). That is, "in consenting to no-action clauses by purchasing bonds, plaintiffs waive their rights to bring claims that are **common** to all bondholders." *Feldbaum*, 1992 WL 119095 at *7 (emphasis added).

28.     New York's Appellate Division[5] has instructed that no-action clauses do not bar noteholders' claims to vindicate their **individual** consent rights. *Eaton Vance Mgmt. v. Wilmington Sav. Fund Soc'y, FSB*, 171 A.D.3d 626, 626 (1st Dep't 2019). In *Eaton Vance*, a broad no-action clause prohibited all "actions or proceedings, judicial or otherwise, for any right or remedy against any Loan Party under any of the Loan Documents." *Eaton Vance Mgmt. v. Wilmington Sav. Fund Soc'y, FSB*, Index No. 654397/2017 (N.Y. Sup. Ct.), NYSCEF 4 at 101. Although the clause did not explicitly exempt actions to enforce a provision requiring unanimous consent for transfer of substantially all collateral, defendants conceded, and the trial court held, that minority holders could sue to vindicate their individual consent rights under that provision. *Eaton Vance Mgmt.*, 2018 WL 1947405, at *8-9 (noting that no-action clauses apply "so long as … lenders' contractual

---

[5] Federal courts follow the "decisions of an intermediate state court" "unless other persuasive data show that the highest court of the state would decide otherwise." *Fisher v. USAA Casualty Ins. Co.,* 973 F.2d 1103, 1105 (3d Cir. 1992) (quotations omitted).

rights are not alleged to have been violated"). On appeal, the First Department went further, citing the Court of Appeals' decision in *Cortlandt* to hold that "claims alleging the transfer of substantially all of the collateral"—a sacred right under that credit agreement—"without unanimous approval are a specifically delineated exception to the no-action clause." *Eaton Vance Mgmt.,* 171 A.D.3d at 676 (citing *Cortlandt,* 31 N.Y.3d at 43).

29.     Similarly, in *Cypress Associates, LLC v. Sunnyside Cogeneration Associates Project,* after a majority of bond holders approved an amendment to a loan agreement, the Delaware Chancery Court held that the agreement's no-action clause could not bar a minority holder's suit to void an amendment to which it had not consented. 2006 WL 668441 (Del. Ch. Mar. 8, 2006). Citing *Feldbaum,* the court reasoned that the holder "does not seek to bring a claim that will inure to all Bondholders pro rata to their ownership, it seeks to vindicate its minority rights. It would be a futile exercise for [the minority holder] to ask the majority of the Bondholders who disagree with it to join with it in a suit to declare an Amendment they support invalid." *Id.* at *7.[6]

30.     So too here. Plaintiffs do not seek to "enforce rights shared ratably by all bondholders," *Feldbaum,* 1992 WL 119095 at *7; they "seek[] to vindicate [] minority rights," *Cypress*, 2006 WL 668441 at *7, specifically individual holder rights under Section 9.02(d)(10) to consent to amendments that deal with the application of Collateral proceeds. Plaintiffs do not seek a remedy that would "inure to all Bondholders pro rata to their ownership," *id.*; they seek a declaratory

---

[6] Courts routinely hold that no-action clauses cannot bar suits in which it would be futile for plaintiffs to comply, such as where a suit alleges misconduct by the trustee. *Feldbaum*, 1992 WL 119095 at *7 (stating that no-action clauses would not bar suits by bondholders "where they allege specific facts which if true establish that the trustee itself has breached its duty under the indenture or is incapable of disinterestedly performing that duty"); *see also Blackrock Balanced Capital Portfolio (FI) v. U.S. Bank Nat'l Ass'n,* 165 A.D.3d 526, 528 (1st Dep't 2018) (excusing plaintiffs' compliance with a no-action clause "because it would be futile to demand that the trustee commence an action against itself for breaches of the PSA") (citing *Quadrant*).

judgment that TPC violated the Minority Holders' individual consent rights by failing to get their consent before amending the Original Indenture and the 2019 Intercreditor Agreement. And it would be futile for Plaintiffs to ask the majority Ad Hoc Group of Cross-Holders who consented to the amendments at issue and could block any suit by the Trustee with a simple majority vote, "to join with [Plaintiffs] in a suit to declare an Amendment [that the Cross-Holders] support invalid." *Id*. The No-Action Clause thus cannot bar Plaintiffs' claims. *Eaton Vance*, 171 A.D.3d at 626.[7]

31.     TPC's arguments are not to the contrary. It asserts that New York law "has long favored" enforcing no-action provisions, TPC MTD 5, but the contracting parties were presumptively aware when they entered the Original Indenture in 2019 that *Quadrant* and *Eaton Vance* had established that no-action clauses do not bar holders' claims to vindicate individual consent rights under New York law. *See Mayo v. Royals Ins. Co. of Am.*, 242 A.D.2d 944, 945 (4th Dep't 1997) ("it is presumed that the parties had [New York law] in contemplation when the contract was made"). The cases TPC cites on this point, TPC MTD 5, in fact explain that such clauses are designed to protect the collective rights of all holders. *Feder v. Union Carbide Corp.*, 530 N.Y.S.2d 165, 167 (2d Dep't 1988) ("[T]he purpose of [no-action clauses] is to deter individual debenture holders from bringing independent lawsuits which are more effectively brought by the indenture trustee."); *Birn v. Childs Co.*, 37 N.Y.S.2d 689, 696 (Sup. Ct. 1942) (noting that no-action clauses "protect the rights and security of all holders as a class").

32.     TPC asserts that no-action clauses must be "strictly construed," TPC MTD 5, but the New York Court of Appeals explained that "no-action clauses are to be construed strictly and **thus read narrowly**," *Quadrant*, 23 N.Y.3d at 560 (emphasis added), not broadly, as TPC does.

TPC also asserts that courts "routinely dismiss" claims as barred by no-action clauses, TPC MTD 5-6, but its cited cases either concerned suits to enforce the collective rights of all holders (not individual consent rights) or declined to enforce the no-action clause at all[8]—and several of their cases actually support Plaintiffs' case because they note that no-action clauses do not bar suits to enforce individual rights.[9] TPC also asserts that Plaintiffs did comply with all of the No-Action Clause's subsection, and could not comply with subsection 2 because they lack 25% of the aggregate principal of the outstanding Senior Secured Notes, TPC MTD 5—but once Plaintiffs' compliance with any portion of the No-Action Clause is excused, "performance of the entire provision is excused, including the requirement that demand be made by 25% of the certificate holders." *Blackrock Balanced Capital Portfolio (FI),* 165 A.D.3d at 528.

### B. TPC's Alternative Interpretation of the No-Action Clause Is Foreclosed by New York Law

33.     Even if New York law were silent on the question of whether no-action clauses bar suits to enforce holders' individual consent rights (it is not), TPC's proposed interpretation of the

---

[8] *Birn*, 37 N.Y.S.2d at 696 (Sup. Ct. 1942) (no-action clause did *not* bar individual claim); *Alleco Inc. v. IBJ Schroder Bank & Tr. Co.*, 745 F. Supp. 1467, 1476 (D. Minn. 1989) (no-action clause barred collective claims but not claim for individual right to payment); *SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.*, 934 F. Supp. 2d 516, 531 (E.D.N.Y. 2013) (no-action clause barred collective claims); *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing*, Inc., 837 F. Supp. 2d 162, 186 (S.D.N.Y. 2011) (no-action clause barred collective claims, including claims regarding mismanaging mortgages, self-dealing, and misrepresentations); *Akanthos Capital Mgmt., LLC v. CompuCredit Holdings Corp.*, 677 F.3d 1286, 1296 (11th Cir. 2012) (no-action barred collective claims related to fraudulent transfers); *Peak Partners, LP v. Republic Bank*, 191 F. App'x 118, 127 (3d Cir. 2006) (no-action clause barred collective claim alleging that "all bondholders were harmed"); *Brady v. UBS Fin. Servs. Inc*, 538 F.3d 1319, 1324 (10th Cir. 2008) (claim not barred where plaintiff had an "absolute and unconditional" right to receive payment).

[9] *See Peak Partners*, 191 F. App'x at 127 (no-action clause applies only if a suit "seek[s] to enforce rights shared ratably by all bondholders"); *Akanthos Capital Mgmt., LLC*, 677 F.3d at 1296 (no-action clause did not bar individual holder claims where trustee "cannot properly pursue a remedy for trust beneficiaries").

Original Indenture is precluded by bedrock principles of New York law. On TPC's reading, the Original Indenture granted individual rights that it simultaneously made functionally impossible for minority holders to enforce. Section 9.02(d)(10) expressly and unambiguously lays out amendments, supplements, or waivers that require individual consent. A.D.I. 17, Ex. A. Yet, TPC would read Section 6.06 to preclude any unilateral action to vindicate those rights.

34.    TPC's interpretation would render the Original Indenture's sacred rights meaningless. Under New York law, a contract interpretation that has "the effect of rendering at least one clause superfluous or meaningless … is not preferred and will be avoided if possible." *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) ("Rather, an interpretation that gives a reasonable and effective meaning to all terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect.") (internal citation omitted); *Lawyers' Fund for Client Prot. of State of N.Y. v. Bank Leumi Trust Co. of N.Y.*, 94 N.Y.2d 398, 404 (2000) (rejecting interpretation that would render a provision "superfluous" as "unsupportable under standard principles of contract interpretation"). Under TPC's interpretation, the No-Action Clause would functionally prevent minority holders from ever vindicating their consent rights against amendments supported by a majority because a simple majority could always bar the claim. This would render the ten individual protections of Section 9.02(d)(10) meaningless. *See Galli*, 973 F.2d at 149 (rejecting interpretation that was "consistent with the plain language of [relevant provision]" but not the "entire framework of the agreement" and would render three other provisions "superfluous").

35.    TPC's interpretation also would be commercially unreasonable. "It is a longstanding principle of New York law that a construction of a contract that would give one party an unfair and unreasonable advantage over the other, or that would place one party at the mercy of the other, should, if at all possible, be avoided." *ERC 16W Ltd. P'ship v. Xanadu Mezz Holdings LLC*, 95

A.D.3d 498, 503 (1st Dep't 2012) (citing *Metro. Life Ins. Co. v. Noble Lowndes Int'l*, 84 N.Y.2d 430, 438 (1994)). TPC's interpretation would effectively prevent minority holders from ever enforcing their individual consent rights against an amendment supported by the majority—allowing majority noteholders to subordinate minority holders whenever they like. No rational lender would agree to such an arrangement, which would put minority lenders decidedly "at the mercy" of majority lenders, and the Court should not read the Original Indenture to create one. *See ERC 16W Ltd. P'ship*, 95 A.D.3d at 503–505 (rejecting interpretation that would prevent borrower from objecting to lender's assignment of funding obligations and also give borrower no right to compel assignees to honor those commitments).

## II. The Court Should Strike or Dismiss TPC's Initial Counterclaim as Procedurally Improper

36.    TPC's Initial Counterclaim, which it opted to file as a standalone document, and not with an answer, is procedurally improper. Federal Rule of Civil Procedure 13, applicable here via Federal Rule of Bankruptcy Procedure 7013, requires parties to state counterclaims in "a pleading." Fed. R. Civ. P. 13(a)(1) ("A pleading must state as a counterclaim" compulsory claims; "[a] pleading may state as a counterclaim" non-compulsory claims). Federal Rule of Civil Procedure 7(a), incorporated by Federal Rule of Bankruptcy Procedure 7007, provides an exhaustive list of permissible pleadings, Fed. R. Civ. P. 7(a) ("Only these pleadings are allowed"), which include complaints, answers, and a reply to an answer—but not a counterclaim. *Id.*

37.    Courts consistently hold that the combined effect of Rules 7(a) and 13 is that a standalone counterclaim is a "procedural nullity," *Allied Med. Assocs. v. State Farm Mut. Auto. Ins. Co.*, 2009 WL 839063, at *2 (E.D. Pa. Mar. 26, 2009) (dismissing standalone counterclaim), which "must be dismissed and/or stricken." *Bernstein v. IDT Corp.*, 582 F. Supp. 1079, 1089 (D.

Del. 1984) ("[B]ecause General Dynamics has filed no pleading, its counterclaims must be dismissed and/or stricken.").[10] This is true even if, as here, the defendant also moved to dismiss the complaint. *Sevi v. Israel Disc. Bank of N.Y.*, 2014 WL 12861831, at *2 (S.D. Fla. July 8, 2014) ("[P]rior to answering and with its motion to dismiss still pending, [Defendant] brought a stand-alone counterclaim against [Plaintiff]. [Defendant's] stand-alone counterclaim is simply not permissible."). The same result is unavoidable here: Because TPC opted not to file its Initial Counterclaim in a pleading, the Court should dismiss or strike that Counterclaim as procedurally improper.[11] In the alternative, the Court should dismiss the claim for the same reasons it should deny TPC's Motion to Dismiss. *See* Section I, *supra*.

## III. The Court Should Deny TPC's Motion for Summary Judgment as Procedurally Improper

38.     Because TPC's Initial Counterclaim is a procedural nullity that the Court must strike or dismiss, *see* Section II, *supra*, TPC's Motion for Summary Judgment on that Counterclaim is likewise a procedural nullity, as TPC does not have a proper claim before the Court on which it could grant summary judgment. The Court thus should deny it. *See Meierhenry*, 2019 WL

---

[10] *See also Mobley v. Safeco Ins. Co. of Ill.*, 2012 WL 12916444, at *1 (M.D. Fla. Apr. 12, 2012) (holding that since "counterclaims must appear in a pleading", freestanding counterclaim was a "nullity" that "should be stricken from the record"); *Microsoft Corp. v. Ion Techs. Corp.*, 484 F. Supp. 2d 955, 965 (D. Minn. 2007) (dismissing counterclaims because "[c]ounterclaims… must appear in a pleading, and a separate document that contains counterclaims is not a permissible pleading"); *ITL Int'l, Inc. v. Walton & Post, Inc.*, 2011 WL 13055064, at *1 (S.D. Fla. June 6, 2011) ("Defendant filed its counterclaim as a stand alone docket entry. Indeed, Defendant had not answered the Amended Complaint. Accordingly, the Court must dismiss the counterclaim as a procedural nullity."); *QFS Transp., LLC v. Huguely*, 2022 WL 1443433, at *4 (S.D. Ohio May 6, 2022) ("Because Huguely's counterclaim was required to be stated in a pleading, and it wasn't, it is appropriately dismissed."); *Meierhenry Sargent LLP v. Williams*, 2019 WL 2105986, at *4 (D.S.D. May 14, 2019) (treating standalone counterclaims as "not pending before the Court").

[11] To avoid delay of the agreed upon schedule, counsel for Plaintiffs notified counsel for TPC of its procedural error and offered to keep the same briefing schedule on TPC's Motion to Dismiss if TPC would withdraw its procedurally improper Counterclaim. TPC declined to change its filings. Plaintiffs oppose any new filing that would have the effect of altering the current schedule.

2105986, at *4 (dismissing motion to stay counterclaims pending appeal and arbitration when "[c]ounterclaims have not been asserted within a pleading and are thus, not pending before the court"); *see also, e.g.*, *Skeans v. Key Commercial Fin., LLC.*, 2022 WL 605718, at *2 (D. Del. Jan. 24, 2022) ("Peterson's intervention motion was not accompanied by a pleading and therefore he failed to comply with Rule 24(c). Accordingly, I will deny the motion."); *Holland v. Simon Prop. Grp., Inc.*, 495 F. App'x 270, 274 (3d Cir. 2012) (finding plaintiff's "failure to submit a copy of his proposed second amended complaint, standing alone, was enough reason to deny his" post-judgment motion to amend his complaint).

39.     TPC's New Counterclaim does not make TPC's Motion for Summary Judgment procedurally proper. TPC's Motion for Summary Judgement is based on the Original Counter-claim, which is void; TPC has not filed (as it would have to) a new motion for summary judgment ins support of its New Counterclaim.

40.     Even if TPC's Motion for Summary Judgment were properly before the Court (it is not), it states the same arguments as TPC's Motion to Dismiss, and the Court should deny the former for the same reasons it should deny the Motion to Dismiss. *See* Section I, *supra*.

**IV.     The Court Should Dismiss TPC's New Counterclaim**

The Court should dismiss the TPC's New Counterclaim—filed at 5 p.m. on the day this brief was due—under Rule 12(b)(6), made applicable through Bankruptcy Rule 7012, for the same reasons it should deny TPC's Motion to Dismiss. *See* Section I, *supra*.

<u>**CONCLUSION**</u>

The Court should deny TPC's Motion to Dismiss, strike or dismiss TPC's Initial Counterclaim, deny TPC's Motion for Summary Judgment, and dismiss TPC's New Counterclaim.

Dated:   June 22, 2022

Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

By:   /s/ *Timothy P. Cairns*

Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899 (Courier 19801)
Tel: 302-652-4100
Facsimile: 302-652-4400
ljones@pszjlaw.com
tcairns@pszjlaw.com

- and -

Jennifer Selendy (*pro hac vice*)
Andrew R. Dunlap (*pro hac vice*)
Oscar Shine (*pro hac vice*)
Max H. Siegel (*pro hac vice*)
SELENDY GAY ELSBERG PLLC
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
jselendy@selendygay.com
adunlap@selendygay.com
oshine@selendygay.com
msiegel@selendygay.com

*Attorneys for the Ad Hoc Group of Non-Consenting Noteholders*