## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1]<br><br>Remaining Debtors. | Chapter 11<br><br>Case No. 17-12560 (JKS)<br><br>(Jointly Administered)<br><br>**Objection Deadline: Jan. 21, 2022 at 4:00 p.m. (ET)**<br>**Hearing Date: Feb. 8, 2022 at 10:30 a.m. (ET)** |

### TRUST'S OBJECTION TO PROOF OF
### CLAIM NO. 2005 FILED BY ROCHELLE BERMAN TRUST

Woodbridge Liquidation Trust (the "Trust"), formed pursuant to the confirmed and effective *First Amended Joint Chapter 11 Plan of Liquidation of Woodbridge Group of Companies, LLC and its Affiliated Debtors* [Dkt. No. 2397] (the "Plan") in the jointly-administered chapter 11 bankruptcy cases (the "Chapter 11 Cases") of Woodbridge Group of Companies, LLC and its affiliated debtors and debtors in possession (collectively, the "Debtors"), hereby files this objection (this "Objection") seeking entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) disallowing and expunging Claim No. 2005 (the "Disputed Claim") asserted by Rochelle Berman Trust ("Claimant") against Debtor Woodbridge Group of Companies, LLC and (ii) directing Epiq Class Action and Claims Solutions, Inc. (the "Claims Agent") to reflect the foregoing modification on the official register maintained by the Claims Agent (the "Claims Register").  In support of this Objection, the Trust relies on the record of these Chapter 11 Cases, the *Request for Judicial Notice in Support of Trust's Objection to Proof of Claim No. 2005 Filed by Rochelle Berman Trust* filed concurrently herewith (the "RJN"), and the declaration of Thomas P. Jeremiassen (the "Jeremiassen

---

[1] The Remaining Debtors and the last four digits of their respective federal tax identification numbers are as follows: Woodbridge Group of Companies, LLC (3603) and Woodbridge Mortgage Investment Fund 1, LLC (0172).  The Remaining Debtors' mailing address is 201 N. Brand Blvd., Suite M, Glendale, California 91203.

Declaration"), a copy of which is attached hereto as **Exhibit B**, and respectfully states as follows:

## I. JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Local Rule 9013-1(f), the Trust consents to the entry of a final order by the Court in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief requested herein are section 502(d) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 3001, 3003, and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 3007-2.

## II. BACKGROUND

**A.  The Chapter 11 Cases**

2. On December 4, 2017, certain of the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code, and on February 9, 2018, March 9, 2018, March 23, 2018, and March 27 2018, additional affiliated Debtors (27 in total) commenced voluntary cases under chapter 11 of the Bankruptcy Code (collectively, the "Petition Dates"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors managed their financial affairs as debtors in possession.

3. The Chapter 11 Cases were jointly administered pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1. No trustee was appointed in the Chapter 11 Cases. On October

2

26, 2018, the Court entered an order confirming the Plan. Dkt. No. 2903 (the "Confirmation Order"). The Plan and Confirmation Order established that the Debtors were operated as a Ponzi scheme. On February 15, 2019, the effective date of the Plan occurred and the Trust was established. *See* Docket No. 3421.

**B.    The Disputed Claim**

4.      On or about June 18, 2018, Rochelle Berman ("Berman"), on behalf of Claimant, filed the Disputed Claim in the amount of $30,000. Claimant is a trust that is controlled by Berman and for the benefit of Berman. A copy of the Disputed Claim is attached as **Exhibit A** to the RJN. Item 8 on the Disputed Claim identifies the basis for the claim as "Loan – Interest in deed of trust secured by real estate." For the reasons discussed below, the Disputed Claim should be dismissed and expunged.

**C.    The Adversary Proceeding**

5.      On or about November 21, 2019, the Trustee filed a complaint against Berman, individually, and Berman, as trustee of Claimant, asserting claims for avoidance and recovery of avoidable transfers, equitable subordination, sale of unregistered securities, fraud, and aiding and abetting fraud (the "Adversary Complaint"). A copy of the Adversary Complaint is attached as **Exhibit B** to the RJN. The adversary proceeding commenced by the Adversary Complaint was stayed by the filing of Claimant's Chapter 13 case, as described below. A copy of the docket of the adversary proceeding is attached as **Exhibit C** to the RJN.

**D.    Claimant's Chapter 13 Case**

6.      On or about January 16, 2020, Berman filed a voluntary Chapter 13 petition in the United States Bankruptcy Court for the Southern District of Florida. A copy of Berman's Chapter 13 petition is attached as **Exhibit D** to the RJN (and indicates that Berman is "the Trustee and Beneficiary" of Claimant; *see* Page 14 thereof) and a copy of the docket of Berman's Chapter 13

case is attached as **Exhibit E** to the RJN. On May 19, 2020, a chapter 13 plan was confirmed in Berman's case. *See* **Exhibit F** to the RJN.

### E.     Debtors' Claims Against Berman and Claimant

7.     As set forth in the Adversary Complaint, which the Trust incorporates in full by reference herein, Berman sold Notes and Units (each as defined in the Plan) to unsuspecting investors and created marketing materials and sales scripts to facilitate such sales. These securities (*i.e.*, the Debtors' Notes and Units) were not registered with the Securities and Exchange Commission (the "SEC") or applicable state securities agencies and there was no applicable exemption from registration. Nor was Berman registered as a broker-dealer with the SEC or applicable state agencies.

8.     Because the Debtors operated as a Ponzi scheme, Berman's conduct in obtaining new money from Investors into the Ponzi scheme conferred no net benefit on the Debtors; on the contrary, each new investment was a net negative. Money was siphoned off to pay the expenses incurred by Robert Shapiro's lavish lifestyle, brokers' commissions, overhead (largely for selling even more Notes and Units to investors), and payment of principal and interest to existing investors. New money, such as the investments procured by Berman, also perpetuated the Ponzi scheme by enabling the Debtors to return fictitious profits to early investors, thereby keeping the house of cards standing and the truth concealed. At the same time, each investment created an obligation to return to the defrauded investor 100% of the investment, such that each new investment increased the Debtors' liabilities and ultimately left them unable to satisfy their aggregate liabilities.

9.     Notwithstanding that Berman's conduct only advanced the Ponzi scheme and did not confer any benefit to the Debtors, Berman received from the Debtors (A) payments in the net aggregate amount of $5,500 in the 90 days preceding the petition date, which payments were made

while the Debtors' were insolvent[2] and which payments (i) were made by the Debtors on account of commission obligations incurred prior to payment as a result of Notes and Units sold by Berman; (ii) were made using funds belonging to the Debtors; and (iii) enabled Berman to receive more than she would have received if the 90-Day Transfers had not been made and Berman received a distribution pursuant to a Chapter 7 liquidation and (B) additional net payments in the net aggregate amount of $101,640.98 in the two years preceding the petition date that were made by the Debtors with actual intent to hinder, delay, or defraud the Debtors' creditors, insofar as the services to be provided in exchange for such transfers would perpetuate a Ponzi scheme (the preferential and fraudulent payments, collectively, the "Avoidable Transfers").

10.    On the basis of the foregoing facts, as supported by the Adversary Complaint (including the schedules attached thereto) and the Jeremiassen Declaration, the Trust reasserts against Claimant and Berman the first through sixth claims set forth in the Adversary Complaint (collectively, the "Avoidance Claims"), in each case solely for the purpose of securing the disallowance and expungement of the Disputed Claim.[3] For the avoidance of doubt, the Trust does not seek any affirmative recovery.

### III.  RELIEF REQUESTED

11.    By this Objection, the Trust requests entry of the Proposed Order (i) disallowing and expunging the Disputed Claim in its entirety and (ii) directing the Claims Agent to reflect the foregoing modification on the Claims Register.

---

[2] Section 547(f) of the Bankruptcy Code provides a presumption that the Debtors were insolvent during the 90 days preceding their respective petition dates.
[3] The Avoidance Claims include counts under Bankruptcy Code sections 547, 548, and 544.

## IV.  BASES FOR OBJECTION

12.  Pursuant to Bankruptcy Code section 502(d), a Bankruptcy Court "shall disallow" the claim of any claimant who has received a transfer avoidable under 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, unless the claimant has repaid the amount owed to the trustee on account of the avoidable transfer.  11 U.S.C. § 502(d).  As set forth herein and in the Adversary Complaint (incorporated herein by reference), and as supported by the Jeremiassen Declaration, the Trust has established a prima facie case that Berman (who controls and benefits from Claimant) received transfers avoidable under sections 544(b), 547, and 548(a) of the Bankruptcy Code.[4]  Neither Berman nor Claimant has not returned the Avoidable Transfers and, in light of Berman's Chapter 13 bankruptcy case, the Trust is not pursuing an affirmative recovery of the Avoidable Transfers, and seeks no payment whatsoever from Claimant or Berman.[5]  Nevertheless, because Berman received transfers avoidable under sections 547, 548(a) and 544(b) of the Bankruptcy Code, Claimant's Disputed Claim must be disallowed pursuant to Section 502(d).

13.  That, as a technical matter, the Avoidable Transfers were received by Berman (in her individual capacity), and the Disputed Claim was filed by Berman in the name of Claimant does not change this result.  Berman has conceded, in her own bankruptcy petition (*see* RJN Exhibit D, at 13, 14) that she is "the Trustee and the beneficiary of the Trust" and she lists trust assets as her own property.  The Berman Trust is merely an arm of Berman, and, as trustee and beneficiary of the trust, she is free to move funds in or out of the trust for her benefit.  For this

---

[4] Additional facts supporting all of the Avoidance Claims are set forth in the Adversary Complaint, and should the Court require evidence of the other Avoidance Claims asserted in the Adversary Complaint, the Trust reserves the right to offer proof sufficient to support those causes of action as well.

[5] Although the Trust does not seek any payment, Claimant is certainly entitled to repay the amount of the Avoidable Transfers in order to overcome the Trust's 502(d) defense; however, that would not appear to be economically rational in this situation.

reason, the law is clear that a self-settled revocable trust and its settlor are not separate legal entities. *See, e.g.*, *In re Nielsen*, 526 B.R. 351, 355 (Bankr. D. Haw. 2015) ("[S]elf-settled revocable living trusts are not separate entities and that the trust property belongs to the settlor."); *United States v. Real Prop. known as 7208 E. 65th Place*, 2016 WL 3976387, at *1 (N.D. Okla. July 21, 2016) ("[T]he law treats the Trust's assets and interest as Long's assets and interests . . . ."); Restatement (Third) of Trusts, § 25(2) ("the property of [a living] trust is ordinarily treated as though it were owned by the settlor"). Accordingly, Berman should not be able to escape the effects of section 502(d) merely by having filed the Disputed Claim through her trust.

14. The Trust's utilization of section 502(d) for disallowance hereunder is amply supported by the case law and commentary. *See, e.g.*, *In re Vivaro Corporation, et al.*, 541 B.R. 144 (Bankr. S.D.N.Y. 2015) ("[I]f the estate or its representative seeks no affirmative recovery, section 502(d) may be asserted as a claim objection seeking to disallow or expunge the entity's claim."); *In re Giroux*, 2018 WL 6737451 at *3 (Bankr. D. Alaska Dec. 17, 2018) ("The Johnstons argue that such allegations must be brought via adversary proceeding. The court disagrees. . . . this initial disallowance should be made by judicial determination, *whether it be obtained in a claim objection* or by some form of a declaratory judgment action." (internal citation omitted) (emphasis in original)). Collier on Bankruptcy concurs, stating that "[m]ost courts to consider the issue have concluded that there is no prohibition against the trustee's asserting section 502(d) as an affirmative defense to a claim of a creditor even if the trustee's claim is time-barred or otherwise nonrecoverable." 4 COLLIER ON BANKRUPTCY ¶ 502.05 (16th ed. 2021). Such an assertion may result in a claim being "disallowed at least temporarily and for certain purposes, subject to reconsideration, simply upon the allegation of an avoidable transfer," provided that such "initial

disallowance . . . be made by judicial determination," which may be "obtained in a claim objection." *Id.*[6]

15.     Although Berman's Chapter 13 bankruptcy case prevents the Trust from seeking and obtaining an affirmative recovery from Berman, it does not affect the Trust's right to use Section 502(d) as a defense against Claimant's claim against the Trust, nor is a discharged debt (*i.e.*, Berman's liability for the Avoidable Transfers) extinguished; rather, Berman's case merely relieves her for personal liability for such debt. *See, e.g.*, *In re Metiom, Inc.*, 301 B.R. 634, 638 (Bankr. S.D.N.Y. 2003) (holding that, by objecting to a claim under section 502(d), trustee did not violate automatic stay in bankruptcy case of a claimant who was itself a debtor, because "[t]he Trustee does not seek affirmative relief . . . or damages" and is "asserting such rights only as grounds for objecting to . . . the Claim," and "the Trustee merely is proceeding defensively—not asserting a counterclaim—in objecting to the Claim."); *In re Morris*, 570 B.R. 708, 717 (Bankr. M.D. Pa. 2017) ("[D]ischarge does not extinguish the debt, it only relieves the debtor from personal liability."). Here, the Trust seeks no affirmative recovery and seeks no payment whatsoever; the Trust merely seeks to assert its rights under section 502(d) as a shield against an affirmative claim prosecuted by Claimant.

## V.  RESERVATION OF RIGHTS

16.     The Trust reserves the right to amend, modify, and/or supplement this Objection if necessary, including, without limitation, to assert additional bases for disallowance of the Disputed Claim and to present additional evidence in support of disallowance. Nothing contained in this

---

[6] *See, e.g.*, Order Granting in Part Objection to Claim Number 5, *In re Giroux*, No. 18-00071-GS (Bankr. D. Alaska Dec. 17, 2018) (Docket No. 64) ("IT IS HEREBY ORDERED that . . . Proof of Claim No. 5 is temporarily disallowed under § 502(d), because the Johnstons received preference payments under § 547, those payments are avoidable under § 550, and the Johnstons have not repaid the amount of those preferential payments. IT IS FURTHER ORDERED that Proof of Claim No. 5 may be reinstated upon the filing of evidence demonstrating that the Johnstons have repaid the amounts owed to the estate on account of the preferential transfers they received pre-petition.").

Objection or any actions taken by the Trust pursuant to the relief requested herein is intended or should be construed as (i) an admission as to the validity of any claim, (ii) a waiver of the Trust's rights to dispute any claim on any grounds, (iii) a promise or requirement to pay any claim, (iv) an implication or admission that any claim is of a type referenced or defined in this Objection, (v) an implication or admission that any contract or lease is executory or unexpired, as applicable, (vi) a waiver or limitation of any of the Trust's rights under the Bankruptcy Code or applicable law, (vii) a request or authorization to assume or reject any agreement under Bankruptcy Code section 365, (viii) a waiver of any party's rights to assert that any other party is in breach or default of any agreement, or (ix) an implication or admission that any contract or lease is integrated with any other contract or lease.

## VI.  NOTICE

17. The Trust has provided notice of this Objection to: (i) the Office of the United States Trustee for the District of Delaware, (ii) Claimant, (iii) Berman, and (iv) any person that, as of the filing of this Objection, has filed a specific request for notices and papers on and after the effective date of the Plan.  In light of the nature of the relief requested herein, the Trust submits that no other or further notice is necessary.

## VII. CONCLUSION

WHEREFORE, for the reasons set forth herein, the Trust respectfully requests that the Court enter the Proposed Order granting the relief requested herein and granting such other and further relief as is just and proper.

Dated: January 7, 2022
Wilmington, Delaware

*/s/ Colin R. Robinson*
PACHULSKI STANG ZIEHL & JONES LLP
Richard M. Pachulski (CA Bar No. 90073)
Andrew W. Caine (CA Bar No. 110345)
Bradford J. Sandler (DE Bar No. 4142)
Colin R. Robinson (DE Bar No. 5524)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899 (Courier 19801)
Telephone: 302-652-4100
Fax: 302-652-4400
Email: rpachulski@pszjlaw.com
acaine@pszjlaw.com
bsandler@pszjlaw.com
crobinson@pszjlaw.com

-and-

KTBS LAW LLP
Michael L. Tuchin (*pro hac vice*)
David A. Fidler (*pro hac vice*)
Jonathan M. Weiss (*pro hac vice*)
1801 Century Park East, 26th Floor
Los Angeles, California 90067

*Counsel to Woodbridge Liquidation Trust*